# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-842

**DARLENE VITAL**

**VERSUS**

**LANDMARK OF LAKE CHARLES, D/B/A LAKE CHARLES HEALTHCARE, LLC**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 3
PARISH OF CALCASIEU, NO. 12-08845
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

### SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and Shannon J. Gremillion, Judges.

**COOKS, Judge, concurs and assigns written reasons**

                                                **AFFIRMED AND RENDERED.**

**Lawrence Bernard Frieman**
**Juge, Napolitano, Guilbeau**
**330 N. New Hampshire Street**
**Covington, LA 70433**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Landmark of Lake Charles**

**Tina Louise Wilson**
**Attorney at Law**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Darlene Vital**

**GREMILLION, Judge.**

Landmark of Lake Charles (Landmark) appeals the judgment of the workers' compensation judge (WCJ) overturning the decision of the Medical Director for the Office of Workers' Compensation (OWC) and ordering that it provide its injured employee, Darlene Vital, lumbar epidural steroid injections (LESI). Ms. Vital also appeals the WCJ's denial of an award for penalties and attorney fees. For the reasons that follow, we affirm.

## FACTS

Ms. Vital was injured in the course and scope of her employment with Landmark on April 22, 2010, when she slipped and fell while showering a Landmark resident. She alleged injuries to her shoulder and lumbar spine. Her demands for medical treatment were submitted to the Office of Workers' Compensation's Medical Director, Dr. Christopher Rich. Dr. Rich opined that Ms. Vital's demands for shoulder surgery and for LESI were not appropriate under the applicable OWC medical guidelines. Thereafter, Ms. Vital appealed Dr. Rich's decision to the WCJ. The WCJ found that Ms. Vital proved by clear and convincing evidence that she was entitled to the LESI procedure, but not shoulder surgery. Landmark appealed the WCJ's decision. Ms. Vital has answered the appeal and urged that the WCJ erred in not awarding her penalties and attorney fees, and that we award her additional attorney fees for this appeal.

## ANALYSIS

An employer's obligation to furnish medical treatment to its injured employee is governed by La.R.S. 23:1201, et seq. Louisiana Revised Statute 23:1203.1 provides for the creation of a medical treatment schedule to be developed by "the conscientious, explicit, and judicious use of current best

evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research." The Director of the Office of Workers' Compensation is charged with creating this schedule, the oversight of which is entrusted to an appointed medical advisory council composed of members of various medical disciplines, such as orthopedic surgeons.

When a health care provider submits a request to the payor of workers' compensation benefits that a given medical course of treatment or procedure be authorized, and there is a dispute as to whether the treatment is in accordance with the medical treatment schedule, the dispute is directed to the medical director of the Office of Workers' Compensation. The medical director then renders a decision on whether the treatment requested is in accordance with the medical treatment schedule. The decision of the medical director is appealable to the WCJ by the filing of a Disputed Claim for Compensation. The medical director's decision can be overturned when it is shown by clear and convincing evidence that the decision was not in accordance with Section 1203.1.

There is no jurisprudence to guide us on the standard of review of a WCJ's decision about the medical director's application of the medical treatment schedule. The WCJ's analysis is necessarily fact-intensive; therefore we conclude that, as with most findings of fact, the WCJ's decision is subject to review under the manifest error/clearly wrong standard. *See Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170. The manifest error standard requires that we review the record in its entirety to determine not whether the WCJ

was wrong, but whether the record reflects a reasonable basis for the WCJ's decision. *Id.*

The medical director's denial of the LESI procedure was predicated upon the fact that the date of injury was fourteen months and that Ms. Vital's symptoms of low back and leg pain had not changed. Specifically, it stated:

Rationale: All pertinent clinical records submitted were reviewed. (206 pages). The documentation does not support the approval of the requested services per the Louisiana Medical Treatment Guidelines (MTG) noted below. The date of injury is over 14 months ago.

More than 200 pages of records were submitted, a significant amount was redundant with multiple copies; administrative, fax cover sheets, billing sheets, and other non-clinical material; Form 1009 submitter needs to only send pertinent clinical data.

Most recent clinical record submitted dated 11.21.2012 noted low back and left leg pain, no change in pain; exam noted normal motor and reflex. Lumbar imaging report dated 08.07.2012 noted articular facet degeneration at L3/4 and L4/5 with neur0foraminal [sic] narrowing.

The medical director also stated:

The MTG notes the following:
- The emphasis within these guidelines is to move patients along a continuum of care and return-to-work within a six-month time frame, whenever possible.
- Return to Work is therapeutic, assuming the work is not likely to aggravate the basic problem or increase long-term pain. The practitioner must provide specific written physical limitations
- Therapeutic spinal injections may be used after initial conservative treatments, such as physical and occupational therapy, medication, manual therapy, exercise, acupuncture, etc., have been undertaken.
- The purpose of spinal injections is to facilitate active therapy by providing short-term relief through reduction of pain and inflammation.
- Epidural steroid injections are effective for patients with radicular pain or radiculopathy (sensory or motor loss in a specific dermatome or myotome).
- Maintenance care will be based on principles of patient self-management

- Management of pain or injury exacerbations will emphasize initiation of active therapy techniques and may occasionally require anesthetic injection blocks.

The WCJ found that Ms. Vital has chronic pain for which conservative treatment had proven ineffective and that she suffers from disc bulging and degenerative changes that have resulted in neuroforaminal narrowing. This is corroborated by the medical records.

An MRI ordered by Dr. Gunderson and performed on August 7, 2012, was interpreted by the radiologist, Dr. Scott Mills, as demonstrating bilateral neural foraminal narrowing at every level in Ms. Vital's lumbar spine except L1-2. Ms. Vital had undertaken active physical therapy for her condition. These two factors, which are identified by the medical director as having been utilized under the MTG to deny Ms. Vital the LESI procedure, are directly contradicted by the medical records reviewed by the medical director. The record reflects a reasonable basis for the WCJ's finding that the denial was overturned by clear and convincing evidence.

Ms. Vital argues that the WCJ erred in not awarding her penalties and attorney fees for the denial of the LESI procedure. We likewise affirm the WCJ on this point. Penalties and attorney fees for failing to authorize medical treatment by an employer or insurer are governed by La.R.S. 23:1201(F). That section does not authorize penalties or attorney fees if the claim is reasonably controverted by the employer or insurer. La.R.S. 23:1201(F)(2). The MTG governs all treatment to patients unless it can be demonstrated to the medical director that treatment not in accordance with the MTG is reasonably required by a preponderance of the medical evidence. La.R.S. 23:1203.1(I) An employer is entitled to rely upon the

4

decision of the medical director that any treatment proposed is beyond the scope of the MTG.

Ordinarily, a workers' compensation claimant is entitled to additional attorney fees on appeal when she successfully defends a judgment. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/02), 869 So.2d 313. Accordingly, we award Ms. Vital attorney fees of $2,000.00 for work by her counsel on appeal.

**AFFIRMED AND RENDERED.**

DARLENE VITAL

VERSUS

LANDMARK OF LAKE CHARLES, D/B/A
LAKE CHARLES HEALTHCARE, LLC

**COOKS, J., concurring in the result.**

Although I agree with the majority's conclusion to affirm the WCJ's judgment denying penalties and attorney fees, I do not agree with the reasons it relies on for that decision. The majority finds the employer is entitled to rely on the Medical Director's decision and abide by it. I believe this reasoning ignores the provisions of La.R.S. 23:1201(F) which provides for the award of penalties and attorney fees for an employer's "failure to provide payment in accordance with this Section…" The employer's denial of benefits was based on the same medical records relied upon by the Medical Director which the majority correctly finds "directly contradicted" Rich's conclusion that the requested procedure should be denied as not in line with the MTG. When the employer denied the requested treatment it was not relying on a decision by the Medical Director. The employer's actions must be gauged at the time of its initial refusal. The mere fact that the Medical Director agreed with the employer does not exonerate the employer for its actions if it acted improperly. The workers' compensation statutes make no such exception. Louisiana Revised Statute 23:1201(F)(2) provides: "This subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." However, other evidence in the record, other than the Medical Director's opinion, does not suggest the WCJ erred in finding the employer did not act unreasonably

or capriciously in denying the doctor's request for the injections.  Thus, there is no basis to overturn the WCJ's decision regarding penalties and attorney fees.