## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1076


BYRON GULLEY

VERSUS

HOPE YOUTH RANCH, ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 02
PARISH OF RAPIDES, NO. 15-03681
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.


                                                      AFFIRMED.

**Pickett, J., dissents and assigns written reasons.**


**William R. Mustian, III**
**Stanga & Mustian, P.L.C.**
**3117 22nd Street, Suite 6**
**Metairie, LA   70002**
**(504) 831-0666**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Byron Gulley**

**Matthew W. Tierney**
**Tierney and Smiley, LLC**
**3535 S. Sherwood Forest, Suite 233**
**Baton Rouge, LA   70816**
**(225) 298-0770**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Bridgefield Casualty Insurance Company**
    **Hope Youth Ranch**

**AMY, Judge.**

The claimant sought review by the workers' compensation court of a decision of the Louisiana Medical Director denying approval for a trial of a spinal cord stimulator. The workers' compensation judge denied the claimant's petition for review. The claimant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that the claimant, Byron Gulley, was hit by a golf cart while working for the Hope Youth Ranch in 2009.[1] The claimant asserts that he suffered injuries to his head, shoulder, wrist, back, knee, hip, foot, and ankle as a result of the accident. At issue in this appeal is the claimant's request for a trial of a spinal cord stimulator. According to the record, the claimant sought approval from his insurer for the stimulator but was denied. The claimant thereafter sought approval for the procedure from the Medical Director. However, the Medical Director also denied approval for the procedure on the basis that the topography of the claimant's pain was not amenable to stimulation coverage. The claimant appealed that decision to the workers' compensation court. After a hearing, the workers' compensation judge found that the claimant failed to meet his burden of proof. The workers' compensation judge specifically noted that "[t]his gentleman has multiple painful areas. . . . So, I don't think there's clear and convincing evidence that the medical director has failed to follow" the guidelines.

The claimant appeals,[2] asserting that the workers' compensation judge and

---

[1] The record indicates that while the claimant named Summit—Southwest Region in his disputed claim for compensation, that the proper party is Bridgefield Casualty Insurance Company.

[2] This court issued a rule to show cause why the appeal should not be dismissed on the basis that the judgment appealed was a non-appealable, interlocutory ruling. The claimant filed a Motion to Amend Judgment in the workers' compensation court. After obtaining an Amended

the Medical Director erroneously interpreted the Medical Treatment Guidelines to require that the spinal cord stimulator address every painful area in the claimant's body.

**Discussion**

In *Matthews v. Louisiana Home Builder's Association Self Insurer's Fund*, 13-1260, pp. 4-5 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280, 1283, a panel of this court discussed the application of the Medical Treatment Guidelines, stating:

> Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I). Section 1203.1 establishes a procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days. La.R.S. 23:1203.1(J)(1).

After the Medical Director has issued a decision on a claimant's request for medical treatment, any party aggrieved by that decision may appeal that decision to the workers' compensation court, and "[t]he decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section." La.R.S. 23:1203.1(K). With regard to the appellate court's review of the workers' compensation court's judgment affirming or overturning the medical director's decision, this court has applied the manifest error-clearly wrong standard of review where the workers' compensation judge's decision is necessarily fact-

---

Judgment dated December 2, 2015, the claimant filed a Motion to Supplement the Record in this court which was granted on December 10, 2015, and the rule to show cause was recalled.

intensive. *See Guidry v. Am. Legion Hosp.*, 14-1285 (La.App. 3 Cir. 4/1/15), 162 So.3d 728; *Lowery v. Jena Nursing & Rehab.*, 14-1106 (La.App. 3 Cir. 4/1/15), 160 So.3d 620; *Vital v. Landmark of Lake Charles*, 13-842 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017.

The Louisiana Administrative Code addresses operative procedures for chronic pain management, including the implantation of a spinal cord stimulator in 40 La.Admin.Code. Pt. I, § 2113. That Section states, in relevant part:

> 2. Neurostimulation
>
> a. Description — Neurostimulation is the delivery of low-voltage electrical stimulation to the spinal cord or peripheral nerves to inhibit or block the sensation of pain. This is a generally accepted procedure that has limited use. May be most effective in patients with chronic, intractable limb pain who have not achieved relief with oral medications, rehabilitation therapy, or therapeutic nerve blocks, and in whom the pain has persisted for longer than six months. Particular technical expertise is required to perform this procedure and is available in some neurosurgical, rehabilitation, and anesthesiology training programs and fellowships. Physicians performing this procedure must be trained in neurostimulation implantation and participate in ongoing injection training workshops, such as those sponsored by the Internal Society for Injection Studies or as sponsored by implant manufacturers.
>
> . . . .
>
> c. Surgical Indications — Failure of conservative therapy including active and/or passive therapy, medication management, or therapeutic injections. Preauthorization is required. Habituation to narcotic analgesics in the absence of a history of addictive behavior does not preclude the use of neurostimulation. Only patients who meet the following criteria should be considered candidates for neurostimulation:
>
> i. A diagnosis of a specific physical condition known to be chronically painful has been made on the basis of objective findings; and
>
> ii. All reasonable surgical and non-surgical treatment has been exhausted; and

iii.    Pre-surgical psychiatric or psychological evaluation has been performed and has demonstrated motivation and long-term commitment without issues of secondary gain; and

iv.    There is no evidence of addictive behavior. (Tolerance and dependence to narcotic analgesics are not addictive behaviors and do not preclude implantation.); and

v.    The topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered); and

vi.    A successful neurostimulation screening test of two-three days. A screening test is considered successful if the patient (a) experiences a 50 percent decrease in pain, which may be confirmed by visual analogue scale (VAS), and (b) demonstrates objective functional gains or decreased utilization of pain medications. Functional gains may be evaluated by an occupational therapist and/or physical therapist prior to and before discontinuation of the trial.

vii.    For spinal cord stimulation, a temporary lead is implanted at the level of pain and attached to an external source to validate therapy effectiveness. (For peripheral nerve screening, a nerve block is performed to define the specific nerve branch but if multiple branches are involved, a screening test for spinal cord stimulation may be indicated.) Long-term functional improvement is anticipated when objective functional improvement has been observed during time of neurostimulation screen exam.

d.    Contraindications — Unsuccessful neurostimulation test – either inability to obtain functional improvement or reduction of pain, those with cardiac pacemakers, patient unable to properly operate the system. It should not be used if future MRI is planned.

The Medical Director denied the claimant's request for a neurostimulator

with the following comments:

- Clinical indications have not been met. The MTG specifically note that the topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered).

- The sole indication for this diagnostic screening trial is one of several criteria for implantable neuro-stimulator for which the requested diagnostic test is solely clinically intended.

- Regardless of the results of a diagnostic Spinal Cord Stimulator Trial, the patient's multi-focal topography of pain would not be

4

compliant with another required clinical indication for an implantable spinal cord stimulator.

The claimant contends that, in the decision denying the request for a trial of the neurostimulator, the Medical Director's comments indicate that the primary barrier to approval is that the entire area in which the claimant is experiencing pain would not be covered. The claimant submitted medical records, including records from his pain management physician, Dr. Domangue. A review of those records indicates that the claimant reported pain in his left shoulder, low back, left hip, left ankle and foot pain.

Dr. Domangue had previously noted that the claimant failed all conservative treatment, including medication, physical therapy, and injections. Further, in notes dated May 5, 2014, and June 30, 2014, Dr. Domangue opined that a "[spinal cord stimulator] is his best option at this time" and that "a [spinal cord stimulator] is the only other option for long-term pain control." In a note dated May 8, 2015, Dr. Domangue noted that the neurostimulator would address the claimant's "significant low back, left hip, and leg pain which is a primary contributor to his pain issues." He also noted that "NO ONE PROCEDURE WILL ADDRESS ALL AREAS OF THIS PATIENT[']S PAIN" (emphasis in original).

The Medical Director's comments in denying the requested procedure arguably reflect that the Medical Director felt that the claimant's "multi-focal topography of pain" was not compliant with the Medical Treatment Guidelines' requirement that "[t]he topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered)[.]" *See* 40 La.Admin.Code Pt. I, § 2113(A)(2)(c)(v). The claimant argues that requiring the procedure to address all painful areas of the body is an unreasonable

5

interpretation of the Medical Treatment Guidelines. In denying the claimant's application for review in the workers' compensation court, the workers' compensation judge concluded that the Guidelines required "every bit" of a worker's painful areas "have to be amenable to neurostimulation," and denied the application for review on the basis that all of a worker's injured body parts had to be amenable to neurostimulation.

However, we note that the workers' compensation judge's reasons are "not binding or appealable; only the judgment itself has judicial effect and is subject to appeal." *Lestage v. Nabors Drilling Co.*, 10-728, p. 4 (La.App. 3 Cir. 12/8/10), 54 So.3d 133, 136 (quoting *Guidry v. Gulf Coast Coil Tubing*, 09-621 (La.App. 3 Cir. 12/9/09), 24 So.3d 1019), *writ denied*, 11-88 (La. 2/25/11), 58 So.3d 458. Under the particular facts of this case, we do not find that the Medical Director's decision necessarily indicates that the Medical Director actually required the procedure to address all painful areas of the claimant's body. Instead, the language used by the Medical Director generally indicated that "the clinical indications have not been met" and that "the [Medical Treatment Guidelines] specifically note that the topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered)." In other words, the finding may alternatively be viewed as a finding that the claimant's medical records do not adequately document that the areas of the body identified by Dr. Domangue and the associated underlying pathophysiology are amenable to stimulation coverage.[3]

---

[3] Moreover, we note that, in their appellate brief, the appellees assert that the claimant could have sought a variance pursuant to La.R.S. 23:1203.1(I). That provision states that:

> Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably

Accordingly, we do not disturb the workers' compensation judge's conclusion that the claimant failed to show by clear and convincing evidence that the Medical Director's decision was not in accordance with La.R.S. 23:1203.1. *See* La.R.S. 23:1203.1(K). This assignment of error is without merit.

## DECREE

For the foregoing reasons, the judgment of the workers' compensation court dated December 2, 2015, is affirmed. Costs of this appeal are assessed to the appellant, Byron Gulley.

**AFFIRMED.**

---

required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

*Id*.

However, although the claimant requested a variance in his pre-trial brief to the workers' compensation court and the issue was discussed at the hearing, the claimant has not asserted that issue on appeal.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-1076

BYRON GULLEY

VERSUS

HOPE YOUTH RANCH, ET AL.

**Pickett, J., dissenting.**

I respectfully dissent from the majority opinion. As the majority points out, Mr. Gulley suffered multiple injuries in a work-related accident. According to the pain management doctor who recommended neurostimulation, no single treatment would alleviate his shoulder pain and his back pain and his hip pain and his leg pain and his ankle pain and his foot pain. Yet the Medical Director denied the request for neurostimulation because the entire "topography of pain and its underlying pathophysiology" were not "amenable to stimulation coverage."

I disagree with the majority opinion's failure to consider the WCJ's reasoning in determining whether the trial court committed manifest error. The issue before us is the application of the Medical Treatment Guidelines on neurostimulation to Mr. Gulley's case. In applying the Guidelines, we are called upon to determine what Section 2113(2)(c)(v) means when it states:

> The topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered).

The trial court determined that the Guidelines only allowed approval of neurostimulation if "every bit" of the claimant's pain was relieved. I find that reading of the Guidelines creates an impossible situation in a case like Mr. Gulley's. Because Mr. Gulley sustained multiple injuries as a result of a single

work accident, and no treatment, neurostimulation or otherwise, is available to treat all of his pain related to all of his injuries, then neurostimulation for a discrete injured area could never be approved.

Dr. Domangue recommended the treatment for Mr. Gulley's lower back, hip, and leg pain because Mr. Gulley met all the criteria for neurostimulation under the Medical Treatment Guidelines, including treating the topography of pain across that discrete area of his body. I find that his shoulder and ankle injuries are separate injuries, and Mr. Gulley need not show that those areas would be treated by neurostimulation in order for the Medical Director to approve this treatment.

I would reverse the judgment of the WCJ and the Medical Director, and approve the neurostimulation requested by Mr. Gulley.