FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **15th day of March, 2017**, are as follows:


**BY GUIDRY, J.**:


2016-C-1112      BYRON GULLEY v. HOPE YOUTH RANCH, ET AL. (Parish of Rapides)

Retired Judge Gay Caldwell Gaskins assigned as Justice ad hoc, sitting for Genovese, J., recused.

Because we find the Medical Director and the Office of Workers' Compensation misinterpreted the language of Louisiana Administrative Code, and thus misapplied the Medical Treatment Guidelines on neurostimulation to Mr. Gulley's case, we reverse the lower court's ruling and find the Office of Workers' Compensation erred in affirming the decision of the Medical Director.
REVERSED

CRICHTON, J., additionally concurs with reasons.

SUPREME COURT OF LOUISIANA

No. 2016-C-1112

BYRON GULLEY

VERSUS

HOPE YOUTH RANCH, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THRID CIRCUIT, PARISH OF RAPIDES

**GUIDRY, Justice***

In this matter, a workers' compensation claimant sought review of a judgment from the Office of Workers' Compensation affirming the decision of the Medical Director denying his physician's request for trial of a spinal cord stimulator. The court of appeal affirmed the ruling of the Office of Workers' Compensation that the claimant had failed to show the Medical Director's decision was not in accordance with the Medical Treatment Guidelines. Because we find the Medical Director and the Office of Workers' Compensation misinterpreted the language of Louisiana Administrative Code, and thus misapplied the Medical Treatment Guidelines on neurostimulation to Mr. Gulley's case, we reverse the lower court's ruling and find the Office of Workers' Compensation erred in affirming the decision of the Medical Director.

FACTS AND PROCEDURAL HISTORY

The issue presented is whether the Office of Workers' Compensation erred in affirming the decision of the Medical Director. The legislature in 2009 enacted La. Rev. Stat. 23:1203.1 to provide for the establishment of a medical treatment

---

* Retired Judge Gay Caldwell Gaskins assigned as Justice ad hoc, sitting for Genovese, J., recused.

schedule, ultimately promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. *See Church Mutual Ins. Co.*, 2013-2351 (La. 5/7/14), 145 So.3d 271 (summarizing the purpose and history of the Medical Treatment Guidelines). "[M]edical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La. Rev. Stat. 23:1203.1(I). This legislation establishes the procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must then timely act on that request. La. Rev. Stat. 23:1203.1(J)(1). Any aggrieved party may file an appeal with the Medical Director, who must render a decision within thirty days. *Id*. "After the issuance of the decision by the medical director ..., any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.'" La. Rev. Stat. 23:1203.1(K). The decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision ... was not in accordance with the provisions of this Section." *Id.*[1]

Here, the claimant, Byron Gulley, was struck by a golf cart while working for the Hope Youth Ranch in Winnfield, Louisiana, in June 2009. Mr. Gulley claims he suffered injuries to his head, shoulder, wrist, back, knee, hip, foot, and ankle as a result of the accident. The claimant's pain management specialist, Dr. Chad Domangue, recommended a trial of a spinal cord stimulator, on the basis that medications, conservative therapy, and injections had failed to adequately address

---

[1] The court of appeal identified its appellate standard of review as one of manifest error-clearly wrong, explaining that the Office of Workers' Compensation hearing officer's judgment affirming or overturning the Medical Director's decision is necessarily fact-intensive. *Gulley v. Hope Youth Ranch*, 2015-1076 (La. App. 3 Cir. 4/6/16) p. 3, 188 So.3d 1134, 1135-36 (citations omitted).

Mr. Gulley's significant low back, left hip, and leg pain emanating from chronic L-5 radiculopathy, which is the primary contributor to his pain issues.

There have been at least two requests for the trial of the spinal cord simulator. After Mr. Gulley received the necessary clearance from a psychologist, Dr. Domangue first requested the spinal cord stimulator by filing a Form 1010 under the procedures of the Medical Treatment Guidelines. This first request was denied by the employer's insurer; an appeal was taken to the Medical Director of the Office of Workers' Compensation, who also denied the request; and the Office of Workers' Compensation District 2 affirmed that denial. No further appeals were taken.

Thereafter, in response to the Medical Director's decision, Dr. Domangue saw Mr. Gulley in May of 2015, and this time clarified that, while the spinal cord stimulator could not possibly address all of the areas of Mr. Gulley's pain, it was expected that the spinal cord stimulator would address his significant lower back pain, left hip pain, and leg pain, which were the primary contributors to his pain issues.[2] With this information, Dr. Domangue filed a second request for the trial of the spinal cord stimulator with the employer's insurer, who denied the request. The claimant sought approval for the procedure from the Medical Director.

_____

[2] According to the Record, Dr. Domangue stated:

"Patient presents for follow-up. WC continues to deny his SCS based on lack of documentation of topography of pain. Patient has completed pain drawing today. To address the issue indicated by WC regarding lack of evidence that SCS will not address all areas of his pain, this is correct. NO ONE PROCEDURE WILL ADDRESS ALL AREAS OF THIS PATIENT'S PAIN. SCS will address his significant low back, left hip, and leg pain which is a primary contributor to his pain issues. To summarize this patient's history, he has undergone multiple injections, procedures, and physical therapy with no sustained effect from any of these. Patient has previous EMG that documents a chronic left L-5 radiculopathy on 9/27/12. His exam findings continue to support this. Previous evaluation and work-up by another pain physician, Dr. Conn, came to the same conclusion and also recommended SCS on 4/11/13. He has previously received psych clearance for this procedure on 3/28/13. It is unclear, based on this information, why this procedure continues to be denied. The patient has attempted to return back to some type of gainful employment and is attending culinary classes. He reports increasing difficulty being able to attend his classes due to his increased pain levels. We will resubmit for his SCS implant [sic] with WC."

However, the Medical Director again denied approval for the procedure on the basis that the topography of the claimant's pain was not amenable to stimulation coverage. The claimant appealed that decision to the workers' compensation court. After a hearing, District 2 of the Office of Workers' Compensation found the claimant had failed to meet his burden of proof. The hearing officer specifically noted that "[t]his gentleman has multiple painful areas.... So, I don't think there's clear and convincing evidence that the medical director has failed to follow" the guidelines.

The claimant appealed, asserting the Office of Workers' Compensation hearing officer and the Medical Director erroneously interpreted the Medical Treatment Guidelines to require that the spinal cord stimulator address every painful area in the claimant's body. The court of appeal affirmed in a split decision. *Gulley v. Hope Youth Ranch*, 2015-1076 (La.App. 3 Cir. 4/6/16), 188 So.3d 1134. The majority reasoned the Medical Director's decision did not necessarily indicate the Medical Director would actually require the requested procedure to address all of the painful areas of the claimant's body, but instead reasoned the Medical Director's finding could be "alternatively viewed as a finding that the claimant's medical records do not adequately document that the areas of the body identified by Dr. Domangue and the associated underlying pathophysiology are amenable to stimulation coverage." 15-1076, p. 6, 188 So.3d at 1138. The majority declined to disturb the hearing officer's conclusion the claimant had failed to show by clear and convincing evidence that the Medical Director's decision was not in accordance with La. Rev. Stat. 23:1203.1. *Id.*, p. 7, 188 So.3d at 1138.

We granted the writ application to determine whether the court of appeal correctly applied the law. *Gulley v. Hope Youth Ranch*, 2016-1112 (La. 11/18/16),

4

___ So.3d ___.  For the reasons set forth below, we reverse the court of appeal's decision.

DISCUSSION

The Louisiana Administrative Code addresses the operative procedures for chronic pain management, including the implantation of a spinal cord stimulator, in 40 La. Admin. Code. Pt. I, § 2113.  That section states, in relevant part:

> 2. Neurostimulation
>
> a. Description--Neurostimulation is the delivery of low-voltage electrical stimulation to the spinal cord or peripheral nerves to inhibit or block the sensation of pain. This is a generally accepted procedure that has limited use. May be most effective in patients with chronic, intractable limb pain who have not achieved relief with oral medications, rehabilitation therapy, or therapeutic nerve blocks, and in whom the pain has persisted for longer than six months. …
>
> ...
>
> c. Surgical Indications--Failure of conservative therapy including active and/or passive therapy, medication management, or therapeutic injections. Preauthorization is required. Habituation to narcotic analgesics in the absence of a history of addictive behavior does not preclude the use of neurostimulation. Only patients who meet the following criteria should be considered candidates for neurostimulation:
>
> i. A diagnosis of a specific physical condition known to be chronically painful has been made on the basis of objective findings; and
>
> ii. All reasonable surgical and non-surgical treatment has been exhausted; and
>
> iii. Pre-surgical psychiatric or psychological evaluation has been performed and has demonstrated motivation and long-term commitment without issues of secondary gain; and
>
> iv. There is no evidence of addictive behavior.  (Tolerance and dependence to narcotic analgesics are not addictive behaviors and do not preclude implantation.); and
>
> v. **The topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered);** and

5

vi. A successful neurostimulation screening test of two-three days. A screening test is considered successful if the patient (a) experiences a 50 percent decrease in pain, which may be confirmed by visual analogue scale (VAS), and (b) demonstrates objective functional gains or decreased utilization of pain medications. Functional gains may be evaluated by an occupational therapist and/or physical therapist prior to and before discontinuation of the trial.

vii. For spinal cord stimulation, a temporary lead is implanted at the level of pain and attached to an external source to validate therapy effectiveness. (For peripheral nerve screening, a nerve block is performed to define the specific nerve branch but if multiple branches are involved, a screening test for spinal cord stimulation may be indicated.) Long-term functional improvement is anticipated when objective functional improvement has been observed during time of neurostimulation screen exam.

d. Contraindications--Unsuccessful neurostimulation test-- either inability to obtain functional improvement or reduction of pain, those with cardiac pacemakers, patient unable to properly operate the system. It should not be used if future MRI is planned.

40 La. Admin. Code. Pt. I, § 2113 (emphasis supplied).

The Medical Director denied the claimant's request for a spinal cord stimulator trial with the following comments:

· Clinical indications have not been met. The MTG specifically note that the topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered).

· The sole indication for this diagnostic screening trial is one of several criteria for implantable neuro-stimulator for which the requested diagnostic test is solely clinically intended.

· Regardless of the results of a diagnostic Spinal Cord Stimulator Trial, the patient's multi-focal topography of pain would not be compliant with another required clinical indication for an implantable spinal cord stimulator.

The claimant contends the Medical Director's comments indicate the main obstacle to approval was that the entire area in which the claimant is experiencing pain, that is, the multi-focal topography of the pain, would not be covered. As the court of appeal noted, the claimant's medical records, including records from his

6

pain management physician, indicate the claimant reported pain in his left shoulder, low back, left hip, left ankle and foot pain. The claimant argues that requiring the procedure to address all painful areas of the body, including his shoulder and ankle, is an unreasonable interpretation of the Medical Treatment Guidelines.

Although the court of appeal majority demurred as to the Medical Director's precise reasons for denying the requested procedure, the Medical Director's comments do indicate the Medical Director believed the claimant's "multi-focal topography of pain" was not compliant with the Medical Treatment Guidelines' requirement that "[t]he topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered)[.]" *See* 40 La. Admin. Code Pt. I, § 2113(A)(2)(c)(v). Furthermore, the Office of Workers' Compensation hearing officer, as evidenced by the transcript of the hearing, clearly interpreted the Medical Treatment Guidelines to require that "every bit" of a worker's painful areas "have to be amenable to neurostimulation."[3] Thus, the hearing officer denied the application for review on the basis that all of a worker's injured body parts had to be amenable to neurostimulation.

The defendants contend the statutory burden of proof is on the claimant to show by clear and convincing evidence that the decision of the Medical Director was not in accordance with the Medical Treatment Guidelines. Though the court of appeal majority did not directly consider the correctness of the hearing officer's reasoning, the defendants point out that the hearing officer specifically, and

---

[3] In written reasons, the hearing officer reiterated this interpretation of the "topography of pain." The hearing officer pointed out that Mr. Gulley's injuries to the left side of his body included his foot, ankle (requiring surgical repair), hip, knee, shoulder (requiring two arthroscopic procedures), and low back. The hearing officer found the Medical Director properly denied the request for trial of the spinal cord stimulator "because there was no showing in the medical records that all the 'underlying pathophysiology' of the multiple pain producing injuries were shown to be amenable to 'stimulation coverage.'"

correctly in their view, concluded the Medical Treatment Guidelines, as written, require the claimant to establish neurostimulation will address all of his pain. The defendants contend the appeal of the Medical Director's decision was properly denied because there is no argument the claimant's entire painful area and pathophysiology will not be addressed by the proposed spinal cord stimulator, which the defendants point out, was conceded by the claimant's pain management specialist.

Therefore, as the dissent below noted, the issue is the application of the Medical Treatment Guidelines on neurostimulation to Mr. Gulley's case. In applying the guidelines, the court must determine the meaning of 40 La. Admin. Code Pt. I, § 2113(A)(2)(c)(v) when it states: "The topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered)…."

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. La. Civ. Code art. 9; *Pumphrey v. City of New Orleans,* 05–979, p. 10 (La.4/4/06), 925 So.2d 1202, 1209. The starting point in the interpretation of any statute is the language of the statute itself, because what the legislature says in the text of a statute is considered the best evidence of legislative intent. *State v. Williams,* 00–1725, p. 13 (La.11/28/01), 800 So.2d 790, 800.

The fundamental question in all cases of statutory interpretation is legislative intent. *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 2000–1695, p. 11 (La.6/29/01), 808 So.2d 294, 302; *Succession of Boyter,* 99–0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. *Id.; Stogner v. Stogner,* 98–3044, p. 5

(La.7/7/99), 739 So.2d 762, 766. Furthermore, the words of a law must be given their generally prevailing meaning. La. Civ.Code art. 11; *Pumphrey,* 05–979 at p. 11, 925 So.2d at 1209–10. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. *SWAT 24 Shreveport Bossier,* 2000–1695 at p. 11, 808 So.2d at 302; *Succession of Boyter,* 99–0761 at p. 9, 756 So.2d at 1129. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. *Id.*

In addition to the above judicial principles, which are guides to determine legislative intent, the legislature has enacted rules for the construction of statutes in the provisions of the revised statutes. The following is pertinent to this case. La. Rev. Stat. 1:3 provides:

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

The hearing officer determined the Medical Treatment Guidelines allowed approval of neurostimulation only if "every bit" of the claimant's pain was relieved. The claimant contends such a reading of the statute creates an impossible situation in a case like his. He reasons, as did the dissent below, that, because he sustained multiple injuries as a result of a single work accident, and no treatment, neurostimulation or otherwise, is available to treat all of his pain related to all of his injuries, then neurostimulation for a discrete injured area could never be approved. The claimant points to the definition of "topography" as contained in

9

various medical dictionaries, to refer not to every painful area on the body, but to specific anatomical areas. For example, "topography" is defined as follows: "the description of the regions of the body or of a body part, especially the regions of a definite and limited area of the surface." *See* The American Heritage Medical Dictionary (Houghton Mifflin Co., 2007). The defendants counter the Medical Treatment Guidelines are clear and unambiguous, and any potential ambiguity as to the use of the term "topography of pain" was directly and specifically addressed as the clarification of that term is contained within the guideline itself, and provides as follows: "(the entire painful area has been covered)."

Although we find no ambiguity per se in the provision, we conclude the Medical Director and the Office of Workers' Compensation have unnecessarily expanded the scope of the provision to encompass every region of the body where the claimant is injured or experiencing pain, regardless of the source of the pain being experienced. Such an expansion of the required scope of the treatment leads to an absurd result, as exemplified in the instant case. Contrary to the defendants' argument, the subject provision does not expand "topography of pain" to every painful area on the body, or to the entire body, but instead delimits it to "the entire painful area…." Here, Dr. Domangue recommended a trial period of neurostimulation for Mr. Gulley's "significant" lower back, hip, and leg pain, diagnosed as "chronic L-5 radiculopathy," because he met all criteria for the treatment under the Medical Treatment Guidelines, including addressing the topography of pain across that discrete region or area of his body related to the injury to his back. Dr. Domangue determined this area of pain is the "primary contributor" to the claimant's pain issues, and that a spinal cord stimulator trial is the only available option for seeking a solution to the claimant's pain and to make him non-dependent on narcotics. No evidence or testimony in the record

10

contradicts Dr. Domangue's determination. As the dissent below reasoned, the claimant's shoulder and ankle injuries are separate injuries, unrelated to the L-5 radiculopathy. Thus, the claimant need not show that those areas would be addressed by neurostimulation in order for the Medical Director to approve the treatment trial related to the injuries to his spine or lower back. Accordingly, we find the Office of Workers' Compensation hearing officer misapplied the language of the provision that "[t]he topography of pain and its underlying pathophysiology are amenable to stimulation coverage (the entire painful area has been covered)…." *See* 40 La. Admin. Code Pt. I, § 2113(A)(2)(c)(v).

CONCLUSION

Because we find the Medical Director and the Office of Workers' Compensation misinterpreted the language of Louisiana Administrative Code, and thus misapplied the Medical Treatment Guidelines on neurostimulation to Mr. Gulley's case, we reverse the lower court's ruling and find the Office of Workers' Compensation erred in affirming the decision of the Medical Director.

**REVERSED**

SUPREME COURT OF LOUISIANA

NO. 2016-C-1112

BYRON GULLEY

VERSUS

HOPE YOUTH RANCH, ET AL

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF RAPIDES


**CRICHTON, J., additionally concurs and assigns reasons**

I concur in the majority's finding that the Office of Workers' Compensation erred in the denial of the claimant's physician's request for a spinal cord stimulator. I write separately to point out that in addition to the absurd result rendered by the Office of Workers' Compensation and addressed by the majority (interpreting 40 La. Admin. Code Pt. I, § 2113(A)(2)(c)(v) to expand "topography of pain" to every painful area on the body), disallowing the trial of the spinal cord stimulator as a pain alleviator for the claimant by default dictates that the claimant would require opioids (perhaps indefinitely) for pain relief. In my view, a more conservative non-narcotic pain management plan (such as the subject stimulator) comports with the spirit and purpose of the Louisiana Workers' Compensation Act, which is to balance the interests[1] of both the employer and employee by providing "for the timely payment of . . . benefits to all injured workers who suffer an injury . . . arising out of an in the course and scope of their employment . . . .to return such workers . . . .to the work force" and to ensure a claimant is entitled to all that is necessary, including "supplies, . . . . medical and surgical treatment, and any

---

[1] "It is well settled that the Louisiana Workers' Compensation Act is a quid-pro-quo system that affords the injured worker with certain but limited benefits in exchange for the general immunity from tort liability granted to the employer." *Champagne v. American Alternative Insurance Corporation*, 12-1697, p. 6 (La. 3/19/13), 112 So.3d 179, 184 (internal citations omitted).

nonmedical treatment recognized by the laws of this state. . . ." La. R.S. 23:1010.1 and La. R.S. 23:1203. To deny this claimant the non-narcotic alternative he seeks not only departs from the appropriate interpretation of the Medical Treatment Guidelines addressed by the majority, but would also leave this claimant, who has exhausted all other options, with the unavoidable use of dangerous and addictive opioids for pain relief. Surely this is not what the Louisiana Workers' Compensation Act seeks to accomplish.