STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 17-602


LONNIE HARPER

VERSUS

BOISE PAPER HOLDINGS, LLC, ET AL.



**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 16-03317
ANTHONY PAUL PALERMO, WORKERS COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.




**REVERSED AND RENDERED.**

**Thomas E. Townsley**
**711 Pujo Street**
**Lake Charles, LA 70601**
**(337) 430-0994**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Lonnie Harper**

**Charles William Farr**
**1966 N. Highway 190, Suite B**
**Covington, LA 70433**
**(985) 626-3812**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Boise Paper Holdings, LLC**
**Sedgwick Claims Management Services, Inc.**

**EZELL, Judge.**

Lonnie Harper appeals the decision of the workers' compensation judge below holding that he failed to prove that a radio-frequency ablation procedure ordered by his doctor was in accordance with Louisiana's workers' compensation medical treatment guidelines (MTG). For the following reasons, we hereby reverse the decision of the workers' compensation judge and render judgment.

Mr. Harper was working at Boise Paper Holdings on August 6, 2012, when he was struck in the face with a large pry bar. He was rendered unconscious and airlifted to Lake Charles for treatment for his injuries. Mr. Harper began having severe headaches radiating from the back of his neck to the side of his head. He was eventually diagnosed as having occipital neuralgia and had several nerve blocks to alleviate his pain. Mr. Harper filed a workers' compensation dispute against Boise, seeking to have an occipital nerve stimulator implanted as a longer term solution to his pain than frequent nerve block injections. A prior workers' compensation judge found that he had suffered a workplace injury, that the injury caused him to suffer occipital neuralgia, and found that he was entitled to receive the nerve stimulator, as well as penalties and attorney fees for Boise's refusal to allow the procedure.

After the stimulator was implanted, Mr. Harper developed a severe infection which necessitated its removal. Leery of again undergoing surgery for a stimulator implant, Mr. Harper sought alternative treatment. He was referred to Dr. Sanjiv Jindia. Dr. Jindia gave Mr. Harper another nerve block but recommended a radio-frequency (hereinafter "RF") ablation procedure for longer-term pain relief. Dr. Jindia requested approval for the procedure but was denied by Boise. This decision was appealed to the medical director, who likewise denied the claim, finding it not to be in line with the MTG. Mr. Harper appealed that decision to the

workers' compensation judge below, who found that he had not proved by clear and convincing evidence that the medical director's decision was incorrect. The workers' compensation judge denied his request for the RF procedure, as well as his claims for penalties and attorney fees, and dismissed his claims with prejudice. From that decision, Mr. Harper appeals.

On appeal, Mr. Harper asserts two assignments of error. He claims that the workers' compensation judge erred in not granting his treating physician's recommendation for the RF ablation, and that the workers' compensation judge erred in denying his claims for penalties and attorney fees. We agree.

> An employer's obligation to furnish medical treatment to its injured employee is governed by La. R.S. 23:1201, et seq. In *Church Mut. Ins. Co. v. Dardar*, 13-2351 (La.5/7/14), 145 So.3d 271, the Louisiana Supreme Court discussed the creation of the MTG and stated:
>
>> Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Thus, La. R.S. 23:1203.1 was enacted with the express intent "that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees."
>
> (Internal citations omitted).

2

La. R.S. 23:1203(A) states in part:

> In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.

*Black v. CenturyLink*, 50, 572, pp. 5-6 (La.App. 2 Cir. 4/13/16), 195 So.3d 28, 31, *writ denied*, 16-905 (La. 9/6/16), 204 So.3d 1000.

A workers' compensation judge may overturn the decision of the medical director if it is shown by clear and convincing evidence that the decision was not in accordance with the provisions of La.R.S. 23:1201, La.R.S. 23:1201.1, and La.R.S. 23:1203.1(K). The decision of the workers' compensation judge is subject to review under the manifestly erroneous/clearly wrong standard. *Vital v. Landmark of Lake Charles*, 13-842 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017.

However, as discussed by this court in *Simmons v. LUBA Workers' Comp.*, 16-523, p. 3 (La.App. 3 Cir. 11/2/16), 206 So.3d 397, 401-02:

> When an error of law is alleged on appeal, the appellate court must determine whether the WCJ's ruling was legally correct. *Edwards v. Ford Motor Co.*, 06-101 (La.App. 3 Cir. 6/21/06), 934 So.2d 221, *writ denied*, 06-1847 (La. 10/27/06), 939 So.2d 1282. If the appellate court's review reveals a reversible error of law, it must conduct a de novo review of the record and render judgment on the merits if possible. *Bridges v. Nelson Indus. Steam Co.*, 15-1439 (La. 5/3/16), 190 So.3d 276. "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Evans v. Lungrin*, 97-541, 97-577, p. 7 (La. 2/6/98), 708 So.2d 731, 735. Such "errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id.*

Both the medical director and the workers' compensation judge found that RF ablation was not covered by the guidelines and that Mr. Harper would need a variance under La.R.S. 23:1203.1(M). We disagree, as we find the procedure is covered by the MTG as written. The relevant medical treatment guidelines

concerning cervical injuries are found at Louisiana Administrative Code Title 40 Pt. I, § 2003 through § 2011.  Section 2009(G)(3)(f), dealing with non-operative therapeutic procedures, states, in relevant part:

> f. Occipital Nerve Block
>
> i. Description. Occipital nerve blocks are generally accepted injections used both diagnostically and therapeutically in the treatment of occipital neuralgia. The greater occipital nerve is the target.
>
> ii. Indications. Diagnosis and treatment of occipital neuralgia/cephalgia. Peripheral block of the greater occipital nerve may be appropriate as initial treatment. It may be indicated in patients unresponsive to peripheral nerve block or those patients in need of additional diagnostic information.

A plain reading of this section dealing with occipital neuralgia indicates that the injury is and should be treated under the guidelines dealing with cervical injuries. The immediately preceding section, 40 La.Admin.Code Pt. I, § 2009(G)(3)(e), deals specifically with RF ablation and states, in pertinent part (emphasis ours):

> e. Radio Frequency (RF) Medial Branch Neurotomy/ Facet Rhizotomy
>
> i. Description. A procedure designed to denervate the facet joint by ablating the corresponding sensory medial branches. Continuous percutaneous radio-frequency is the method generally used.
>
> ii. **There is good evidence to support this procedure in the cervical spine** but benefits beyond one year are not yet established. Radio-frequency medial branch neurotomy is the procedure of choice over alcohol, phenol, or cryoablation. Precise positioning of the probe under fluoroscopic guidance is required since the maximum effective diameter of the device is a 5 x 8 millimeter oval. Permanent images should be recorded to verify placement of the device.
>
> iii. Indications. Those patients with proven, significant, facetogenic pain. This procedure is not recommended for patients with multiple pain generators or involvement of more than three medial branch nerves.

Additionally, 40 La.Admin.Code Pt. I, § 2021(H)(3)(f), dealing with lumbar injuries notes (emphasis ours): "**There is good evidence to support Radio Frequency Medial Branch Neurotomy in the cervical spine** but benefits beyond

4

one year are not yet established. Evidence in the lumbar spine is conflicting; however, **the procedure is generally accepted**."   Radio-Frequency rhizotomy is further discussed in 40 La.Admin.Code Pt. I, § 2113(A)(5), which again states that "[t]here is good evidence to support this procedure for the cervical spine."

The case *sub judice* presents the very type of dispute that the MTG were designed to prevent. See *Black,* 195 So.3d 28.   That Mr. Harper has occipital neuralgia is not only uncontested, but it is the settled law of this case.   A simple reading of the sections above plainly show that RF ablation is an accepted procedure under the MTG for cervical injuries, of which occipital neuralgia is one. 40 La.Admin.Code Pt. I, § 2009(G)(3)(f).   Boise's own evidence noted that "[c]ompression and injury of the occipital nerves within the muscles of the neck and compression of the second and third cervical nerve roots are generally felt to be responsible for the symptoms" of occipital neuralgia.  Moreover, Dr. Erich Wolf, Mr. Harper's treating neurologist, testified that the most likely site of the injury to Mr. Harper's occipital nerve was at the base of the skull, where "the nerve pierces through the cervical fascia. . . . at the junction of the head and the neck." [1]

Although the MTG do not specifically include RF ablation as a non-operative therapeutic procedure for patients with occipital neuralgia directly, the MTG specifically list "Radio Frequency (RF) Medial Branch Neurotomy/ Facet Rhizotomy" as an authorized and generally accepted treatment for cervical spine injuries. 40 La.Admin.Code Pt. I, § 2009(G)(3)(e). As occipital neuralgia is specifically discussed under those same guidelines as being a cervical spine injury, it is patently obvious that RF ablation would be an accepted treatment for that injury.  Therefore, the workers' compensation judge erred in not finding that the

---

[1] Dr. Wolf also testified that RF ablation was one of the "more modern techniques" to treat occipital neuralgia.

MTG authorized the prescription of the RF ablation to treat Mr. Harper's pain caused by occipital neuralgia. The decision of the workers' compensation judge denying Mr. Harper the RF ablation procedure prescribed by his doctors is, accordingly, reversed.

Mr. Harper next claims that the workers' compensation judge erred in failing to award penalties and attorney fees for Boise's denial of the RF ablation procedure.

> An award of attorney fees and penalties is reviewed for manifest error. *Baullion v. Old Am. Pottery Co.*, 01-0562 (La.App. 3 Cir. 11/21/01), 801 So.2d 567. Thus, we review the record to determine not whether the WCJ was wrong, but rather whether the record, as a whole, reveals a reasonable basis for the WCJ's ruling. *Spikes v. Louisiana Commerce & Trade Ass'n*, 13–919 (La.App. 3 Cir. 7/2/14), 161 So.3d 755.

> Louisiana Revised Statutes 23:1203(A) requires an employer to furnish an injured worker with "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." "It is well settled that the failure to authorize or pay for medical treatment equates to the failure to furnish benefits, which can subject an employer to penalties and attorney fees." *Romero v. Garan's, Inc.*, 13-482, p. 3 (La.App. 3 Cir. 8/6/14), 145 So.3d 1120, 1122.

> > The court in *Watson v. Amite Milling Co.*, 560 So.2d 902, 906 (La.App. 1 Cir.), *writ denied*, 567 So.2d 614 (La.1990) (quoting *Hall v. McDonald*, 537 So.2d 328, 332 (La.App. 1 Cir.1988)), observed:

> > > [G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, *did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.*

> > (Emphasis added).

An award of penalties and attorney fees depends on the facts known to the employer at the time of its action. Workers' compensation law provides that an employer may reasonably controvert a disputed claim for medical benefits. La.R.S. 23:1201(F)(2). An "employer must rely on competent medical advice *when* the decision to deny medical treatment is made." *Harrington v. Coastal Constr. & Eng'g*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 457, 459, *writ denied*, 97-0109 (La.3/7/97); 689 So.2d 1375. Further, while we agree with Harrington, we note that lay evidence is equally compelling in a determination of the need for medical treatment.

*Baullion*, 801 So.2d at 576–77 (emphasis in original). "To avoid penalties and attorney[']s fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits." *George v. Guillory*, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209, *overruled on other grounds, Smith v. Quarles Co.*, 04-179 (La.10/29/04), 885 So.2d 562.

. . . .

Finally, while a panel of this court concluded that "[a]n employer is entitled to rely upon the decision of the medical director that any treatment proposed is beyond the scope of the [Medical Treatment Guidelines]." *Vital v. Landmark of Lake Charles*, 13-842, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017, 1020, we disagree. We find such an interpretation to be a departure from the long-standing jurisprudence requiring that an "employer must rely on competent medical advice *when* the decision to deny medical treatment is made." *Baullion*, 801 So.2d at 576-77.; *E.g. Vital v. Landmark of Lake Charles*, 13–842 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017 (Cooks, Judge, concurring); *Harrington v. Coastal Constr. & Eng'g*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 457, 459, *writ denied*, 97-0109 La.3/7/97); 689 So.2d 1375; *Benandi v. Louisiana Pac. Corp.*, 00-21 (La.App. 3 Cir. 5/3/00), 760 So.2d 544, 547, *writ denied*, 00-1560 (La.9/15/00), 768 So.2d 1279. Consequently, we decline to adopt such a drastic departure from well-established jurisprudence.

*Ardoin v. Calcasieu Parish Sch. Bd.*, 15-814, pp. 3-7 (La.App. 3 Cir. 2/3/16), 184 So.3d 896, 899-901, *writ denied*, 16-641 (La. 5/27/16), 192 So.3d 738 (alterations in original).

The utilization review Boise relied on in denying Mr. Harper's claim stated that an RF ablation procedure "is not medically indicated in general" and that the

"'pulsed' RFA . . . is not approved or indicated according to current medical literature." This review is in blatant contrast to the MTG, as discussed above, which notes that the procedure is generally accepted in treating cervical injuries. We find that this utilization review opinion did not constitute competent medical evidence to deny the claim. Moreover, this is in contrast with the opinions of Mr. Harper's treating physicians, who both testified that the procedure was an appropriate treatment for occipital neuralgia. Boise, who has fought treatment of Mr. Harper's neuralgia at every turn, failed in its duty to investigate, assemble, and assess factual information before denying benefits. Therefore, the workers' compensation judge erred in failing to assess Boise penalties and attorney fees. We hereby render judgment awarding Mr. Harper penalties in the amount of $2,000.00 and attorney fees in the amount of $7,500.00.

Mr. Harper also seeks further attorney fees for work done on this appeal. We conclude that an additional award of $2,500 is appropriate to compensate Mr. Harper's counsel for his for the successful prosecution of this appeal.

For the above reasons, the decision of the workers' compensation judge is hereby reversed. We render judgment ordering Boise to approve the RF ablation procedure prescribed by Mr. Harper's doctor. We further render judgment to award Lonnie Harper $2,000.00 in penalties and $7,500.00 in attorney fees for work done at trial, plus an additional $2,500.00 for attorney fees for work done on appeal, for a total attorney fees award of $10,000.00. Costs of this appeal, the costs of the expert fee of Dr. Jindia, and the transcript charge for the deposition of Dr. Jindia are hereby assessed against Boise Paper Holdings, LLC and Sedgwick Claims Management Services, Inc.

**REVERSED AND RENDERED.**