PITMAN, J.
11 Claimant-Appellant Veronica Black appeals the judgment of the Workers’ Compensation Judge (“WCJ”) in favor of Defendants-Appellees CenturyLink and Sedgwick Claims Management Service (“Sedgwick”). For the following reasons, we reverse the judgment of the WCJ.

FACTS

Ms. Black allegedly sustained an injury arising out of and in the course of her employment with CenturyLink. She sought medical treatment with Dr. Michael Acurio, an orthopedic surgeon, and Dr. Matthew Mosura, a pain management specialist, for upper extremity neuropathic pain located in her hands. Dr. Acurio determined that Ms. Black’s pain was caused by chronic regional pain syndrome (“CRPS”) and carpal tunnel syndrome (“CTS”). Dr. Mosura determined that her pain was caused by reflex sympathetic dystrophy syndrome (“RSD”), also known as CRPS and CTS, and prescribed a compounded topical cream,[1] which provided Ms. Black with some relief.
On January 15, 2015, Dr. Mosura filed a request of authorization/carrier or self-insured employer response (Form 1010) with CenturyLink’s insurer/administrator, Sedgwick, to obtain approval of the topical cream to treat Ms. Black’s neuropathic hand pain, listing her diagnoses as RSD and CTS. Sedgwick denied the request and stated that the service requested did not “meet established treatment standards of medical necessity.”
|2In response to Sedgwick’s denial, Ms. Black filed a disputed claim for medical treatment (Form 1009) with the Medical Director for the Office of Workers’ Compensation Administration. She enclosed with this claim the Form 1010, Dr. Mosu-ra’s deposition, her medical records and her affidavit.
On February 11, 2015, the Medical Director denied the request for the topical cream, stating:
• The Louisiana Medical Treatment Guidelines, Chronic Pain Disorder, *30 Chronic Reflex Pain Syndrome and Carpal Tunnel Syndrome subchapters do not address compound topical cream.
• The Louisiana Medical Treatment Guidelines, Chronic Pain Disorder sub-chapter states “Topical medications may be an alternative treatment for localized musculoskeletal disorders and is an acceptable form of treatment in selected patients although there is no scientific evidence to support its use in chronic pain.”
• The Louisiana Medical Treatment Guidelines, CRPS subchapter states “Topical medications, such as ketamine and capsacin, may be an alternative treatment for neuropathic disorders and is an acceptable form of treatment in selected patients although there is no literature addressing its use in patients with CRPS.”
(Emphasis in original.)
On February 26, 2015, Ms. Black filed a disputed claim for compensation (Form 1008) against CenturyLink and Sedgwick.
On March 23, 2015, CenturyLink and Sedgwick filed an answer, denying that Ms. Black has a disability or that she is entitled to any treatment arising from the alleged work injury, denying that the determination of the Medical Director was not in accordance with La. |sR.S. 23:1203.1 and denying that they owe penalties, interest or attorney fees.
A hearing on Ms. Black’s appeal of the decision of the Medical Director was held on March 26, 2015. Counsel for Ms. Black argued that the Medical Director incorrectly interpreted the Medical Treatment Guidelines (“MTG”) and that the topical cream should be available to her because it provided her with some relief. Counsel contended that, if the MTG state that a person can have treatment, then the person should receive the treatment without an additional requirement of medical literature. Counsel for Defendants noted that Ms. Black’s burden of proof is to show by clear and convincing evidence that the Medical Director did not follow the MTG. Counsel differentiated between musculoskeletal complaints (for which the MTG state topical medications may be an alternative treatment) and neuropathic complaints and noted that CRPS is a neu-ropathic issue. Counsel for Ms. Black pointed out that the MTG regarding CRPS also state that topical medications may be- an alternative treatment for neu-ropathic disorders. The WCJ noted that the topical cream would be appropriate based on the diagnosis of CTS, but is not appropriate because of the diagnosis of RSD/CRPS. The parties also disagreed on whether 'Ms. Black has CRPS and whether this determination should be made at the time of the hearing by the WCJ.
On June 12, 2015, the WCJ filed an order stating that, after reviewing the MTG and the evidence submitted to the Medical Director (i.e., the sworn testimony of Dr. Mosura, the sworn affidavit of Ms. Black, Forms 1010 and |41009 and the certified medical records), he determined that Ms. Black had not proved by clear and convincing evidence that the decision of the Medical Director was not in accordance with the MTG. The WCJ noted that this was a final judgment as to the appeal of the decision of the Medical Director and any penalties, interest and attorney fees associated therewith. The WCJ dismissed with prejudice Ms-. Black’s disputed claim' for compensation as to those issues.
Ms. Black appeals.

ARGUMENTS

In her first assignment of error, Ms. Black argues that the WCJ erred in not *31 finding that the MTG “pre-authorized” the prescription of the topical cream. She contends that the topical cream should have been pre-authorized because it falls squarely under the plain language of two separate sections of' the MTG, he., those addressing chronic pain and CRPS.
Defendants argue that Ms. Black provides no evidence, law or support for her contention that the MTG pre-authorized the use of the topical cream. They contend that, while the MTG state that, under certain circumstances, some topical products can be used for upper extremity ailments, these portions of the MTG refer to musculoskeletal disorders, not to neuro-pathic disorders that ail Ms. Black. They also discuss the MTG regarding CRPS and note that there is no literature addressing the use of topical medications in patients with CRPS, that there is no evidence that topical agents are more effective than oral agents and that the maximum duration of use of a topical cream is two weeks per episode. Defendants Estate that the MTG regarding CTS make no mention of the use of topical medications. They also question the inclusion of Lamotrigine, an antiepilepsy drug, in the requested topical cream.
Factual findings in workers’ compensation eases are subject to the manifest error or clearly wrong standard of appellate review. Gilliam v. Brooks Heating & Air Conditioning, 49,161 (La.App.2d Cir.7/16/14), 146 So.3d 734. See also Daniels v. State, Dep’t of Transp. & Dev., 48,578 (La.App.2d Cir.6/25/14), 144 So.3d 1123, quoting Vital v. Landmark of Lake Charles, 13-842 (La.App. 3d Cir.2/12/14), 153 So.3d 1017.
An employer’s obligation to furnish medical treatment to its injured employee is governed by La. R.S. 23:1201, et seq. In Church Mut. Ins. Co. v. Dardar, 13-2351 (La.5/7/14), 145 So.3d 271, the Louisiana Supreme Court discussed the creation of the MTG and stated: - 1
Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. In a similar vein, labor and their medical providers were concerned about the unreasonable, .delays regularly encountered in obtaining approval for treatment when disputes arose as, to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Thus, La. R.S. 23:1203,1 was enacted with the express intent “that, with the establishment arid' enforcement of the medical treatmerit schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient' and timely riianner tri injured employees.”
(Internal citations omitted).
| fiLa. R.S. 23:1203(A) states in part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as- will provide the injured employee with such necessary services.
*32 La R.S. 23:1203.1 provides for the creation of a medical treatment schedule, stating in part:
B. The director shall, through the office of workers’ compensation administration, promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule.
(1) Such rules shall be promulgated no later than January 1, 2011.
(2) The medical treatment schedule shall meet the criteria established in this Section and shall be organized in an interdisciplinary manner by particular regions of the body and organ systems.
C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.
The MTG subchapters on chronic pain and CRPS both state, in part:
Guidelines are recommendations based on available evidence and/or consensus recommendations.... All recommendations in the guideline are considered to represent reasonable care in appropriately selected eases, regardless of the level of evidence or consensus statement attached to it. Those procedures considered inappropriate, unreasonable, or unnecessary are designated in the guideline as “not recommended.”
La. Admin Code. tit. 40, pt. I, § 2103(A)(13) and § 2119(A)(13).
La. Admin Code. tit. 40, pt. I, § 2111, sets forth the nonoperative therapeutic procedures for patients with chronic pain disorders. This |7section specifically addresses the use of topical drugs and states that “[tjopical medications may be an alternative treatment for localized musculo-skeletal disorders and is an acceptable form of treatment in selected patients although there is no scientific evidence to support its use in chronic pain.” La. Admin Code. tit. 40, pt. I, § 2111(C)(6)(e)(x)(a). La. Admin Code. tit. 40, pt. I, § 2131, sets forth the nonoperative therapeutic procedures for patients with CRPS. This section specifically addresses the use of topical drugs and states that “[tjopical medications, such as keta-mine and capsacin, may be an alternative treatment for neuropathic disorders and is an acceptable form of treatment in selected patients although there is no literature addressing its use in patients with CRPS.” La. Admin Code. tit. 40, pt. I, § 2131(C)(6)(d)(v)(a).
The case sub judice presents the very type of dispute that the MTG were designed to prevent. See Church Mut. Ins. Co. v. Dardar, supra. Both Dr. Acu-rio and Dr. Mosura determined that Ms. Black’s pain was caused by CRPS/RSD and CTS, and Dr. Mosura prescribed the topical cream to treat her pain. Although the MTG do not include topical creams as nonoperative therapeutic procedure for patients with CTS, the MTG specifically list “topical medications” as an authorized treatment for CRPS. La. Admin Code. tit. 40, pt. I, § 2131(C)(6)(d)(v)(a). The MTG include CRPS in the chapter addressing pain, not in the chapter addressing upper and lower extremities. The MTG’s inclusion of the statement that “no literature addressing its [i.e., topical medication] use in patients with CRPS” does not negate the inclusion of topical medications as a nonoperative therapeutic |streatment for patients with -CRPS. Further, the MTG’s inclusion of ketamine and capsacin as types of topical medications is an illustra *33 tive list, not an exclusive list. Therefore, the WCJ erred in not finding that the MTG “pre-authorized” the prescription of the topical cream to treat Ms. Black’s pain caused by CRPS.
Accordingly, this assignment of error has merit.
Considering this court’s determination that the WCJ erred in not finding that the MTG “pre-authorized” the prescription of the topical cream, we pretermit discussion of Ms. Black’s remaining assignments of error.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the Workers’ Compensation Judge in favor of Defendants Centu-ryLink and Sedgwick Claims Management Service and against Claimant Veronica Black. Costs of appeal are assessed to Defendants CenturyLink and Sedgwick Claims Management Service.
REVERSED.

. According to Dr. Mosura’s deposition and medical records, the requested cream contains "Lidocaine 2 percent, Prilocaine 2 percent, Lamotrigine 2.5 percent, and Meloxicam 0.09 percent.”