BROWN, CHIEF JUDGE
This is a workers' compensation case. Defendant, Graphic Packaging, Inc., has appealed from a judgment awarding claimant, Grenda Smith, penalties in the amount of $2,000 and attorney fees in the amount of $8,000 based upon the WCJ's finding that defendant failed to reasonably controvert claimant's request for neuropathic pain cream.[1] For the reasons set forth below, we affirm and amend to award additional attorney fees.
FACTS AND PROCEDURAL HISTORY
On August 14, 2012, claimant, Grenda Smith, was injured while working for defendant, *758 Graphic Packaging, Inc. While she was removing a heavy cylinder from a rack, the cylinder rolled off and fell, crushing Smith's right foot and causing severe injuries. Smith underwent emergency surgery and received further treatment from Dr. Timothy Spires, an orthopedic surgeon. Thereafter, Smith was referred to Dr. J. Hardy Gordon, a pain management physician at Louisiana Pain Care. On her first visit, on August 6, 2013, with Dr. Gordon, Smith was diagnosed with neuralgia and prescribed Ultram, Lyrica, and neuropathic cream.
Defendant authorized all of the prescriptions, including the neuropathic cream. Near the end of 2013, defendant required further documentation from Dr. Gordon before reauthorizing the cream. Dr. Gordon submitted the requested information. By letter dated November 6, 2013, Coventry Workers' Comp Services notified Dr. Gordon that "[on] behalf of GALLAGHER BASSETT [defendant's third party workers' comp administrator], the [neuropathic cream] had been reviewed" and "has been determined to be medically necessary ." A year later, in November 2014, before reauthorizing claimant's prescriptions, defendant sent a workers' compensation nurse to discuss claimant's medications with Dr. Gordon; the two specifically discussed Dr. Gordon's justification for the neuropathic cream, which was that the cream caused significantly less side effects and allowed Smith to perform activities of daily living and work.
On March 29, 2016, apparently in response to a request from claimant's pharmacy for continued authorization, defendant sent a letter to Dr. Gordon refusing to authorize further refills of two of claimant's prescriptions, the neuropathic cream and Ultram. This denial was based upon the opinion of Kamran Shabtai, M.D., M.P.H., Occupational Medicine. Dr. Shabtai only reviewed for the purposes of his determination an office visit record documenting claimant's appointment with Dr. Gordon on November 23, 2015, and a health insurance claim form dated December 1, 2015, submitted by Dr. Gordon. Also noted by Dr. Shabtai was that he made one attempt to speak with Dr. Gordon leaving a voicemail at 3:25 p.m. on March 25, 2016. According to Dr. Shabtai, the principal reason for denying approval for the refill of the neuropathic cream was that "the proposed treatment plan is not consistent with our clinical review criteria [set forth in Chapter 21. Pain Medical Treatment Guidelines of the Medical Guidelines]." Additionally, Dr. Shabtai stated that "compounded topical analgesics are not known for their safety and efficacy" and "neuropathic cream is not medically necessary at this time." Claimant and her attorney received the denial on April 4, 2016.
Counsel for claimant made a written demand upon defendant for authorization of the neuropathic cream on April 14, 2016, attaching additional documentation in support of the medical necessity of the cream. Counsel for claimant filed a 1009 appeal with the OWC Medical Director on April 18, 2016. OWC Director Sheral Kellar notified claimant on April 19, 2016, that her 1009 appeal was rejected because it was untimely.
On May 19, 2016, Smith filed a 1008 form seeking authorization of the neuropathic cream prescribed by Dr. Gordon and an award of penalties, attorney fees, costs, and interest. Claimant asserted that the neuropathic cream did not fall under the Medical Treatment Schedule and, as such, was not required to be approved by the medical director via the procedures outlined in La. 23:1203.1 and Part I, Subpart 2, Chapter 27 of Title 40 of the Louisiana Administrative Code. However, if such *759 approval was required, claimant contended that her 1009 appeal with the OWC was timely following her receipt of defendant's denial of authorization of the prescription cream.
On July 19, 2016, defendant filed an answer, denying that claimant was entitled to the neuropathic pain cream as it was not medically necessary and that claimant is not entitled to penalties and attorney fees. On July 21, 2016, defendant deposed Dr. Gordon, and on the next day, July 22, 2016, defendant, through its workers' compensation adjuster, issued a letter stating that it had approved the neuropathic cream as prescribed by Dr. Gordon.
A few days before the July 25, 2016, hearing in this matter, defendant filed an exception of subject matter jurisdiction. The WCJ took up this exception first, found it to be without merit, and then, after defense counsel stated that the only evidence it would be producing would be the adjuster's letter of July 22, 2016, indicating their approval of claimant's request for the neuropathic cream, the WCJ stated that the hearing would be limited to evidence on claimant's request for penalties and attorney fees. The WCJ rendered its judgment, finding that the neuropathic cream was reasonable and necessary under the Workers' Compensation Act, and that Smith was entitled to an award of $2,000 in penalties and $8,000 in attorney fees and costs. Defendant has appealed, and claimant has answered the appeal, seeking an award of attorney fees and costs associated with work done on this appeal.
DISCUSSION
Denial of Exception of Subject Matter Jurisdiction
According to defendant, the WCJ erred in denying its exception of subject matter jurisdiction. The basis for the WCJ's ruling was that there was subject matter jurisdiction because the Medical Treatment Schedule does not apply to prescription medications and, therefore, claimant was not required to follow the procedures set forth in La. R.S. 23:1203.1 and Title 40 of the Louisiana Administrative Code.
We find no error in the WCJ's denial of defendant's exception of subject matter jurisdiction, but we do so for the reasons set forth below.
La. R.S. 23:1310.3(F) provides for OWC jurisdiction for all "claims or disputes arising out of" the Workers' Compensation Act. Broussard Physical Therapy v. Family Dollar Stores, Inc. , 08-1013 (La. 12/02/08), 5 So.3d 812 ; Brookshire Grocery Co. v. Musculoskeletal Institute of Louisiana, A.P.M.C. , 50,208 (La. App. 2 Cir. 05/18/16), 195 So.3d 528.
La. R.S. 23:1203(A) provides in part that in every workers' compensation case, "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." As noted by the supreme court in Church Mutual Insurance Co. v. Dardar , 13-2351 (La. 05/07/14), 145 So.3d 271, 283, no changes to the language of La. R.S. 23:1203(A) were effected with the enactment of La. R.S. 23:1203.1 and the promulgation of the medical treatment schedule. Rather, the language of La. R.S. 23:1203 and the obligation set forth therein remains unchanged. Medical necessity remains the touchstone for an employer's obligation to pay for medical care.
Louisiana Revised Statute 23:1203.1 provides in part:
(I) After the promulgation of the medical treatment schedule, throughout this *760 Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances. (Emphasis added).
(J) (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection 1 of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as practicable, but in no event, not more than thirty calendar days from the date of filing.
In the instant case, defendant approved as medically necessary the prescription neuropathic cream for more than three years. Implicit in this determination was that the cream was care, services, and treatment "in accordance with the medical treatment schedule." As pointed out by the supreme court in Church Mutual Insurance Co., supra, the language of La. R.S. 23:1203(A) and the obligation set forth therein remains unchanged: medical necessity[2] remains the touchstone for an employer's obligation to pay for medical care. According to the supreme court, La. R.S. 23:1302 and 23:1203.1 are not "irreconcilably inconsistent and repugnant." Id. at 284. Rather, they are laws on the same subject matter which must and can be interpreted in reference to each other. Id. The court further wrote in Church Mutual Insurance Co., supra at 284-5, :
With the express intent of delivering health care services to injured employees "in an efficient and timely manner," La. R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether *761 the medical care required to be provided under La. R.S. 23:1203 is necessary. To that end, La. R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preauthorized procedures, administratively developed and approved according to criteria set forth by the statute. These preauthorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the preauthorized procedures and, at the same time, impose a clear-cut obligation on employers. By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical director, to determine in advance the medical necessity for certain care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process. As regards medical procedures not included in the medical treatment schedule and, thus not presumptively deemed necessary, claimants can overcome the predetermination by seeking review and/or a variance from the medical director of the OWC. And, in the event a variance is denied, claimants have resort to another administrative level of review conducted by the OWC judge. In this way, La. R.S. 23:1203.1 and the medical treatment schedule create rebuttable presumptions as to the necessary treatment required by La. R.S. 23:1203(A)....
Louisiana R.S. 23:1203.1 and the medical treatment schedule it implements, while changing the process for determining medical necessity by making the OWC judge's determination of necessary medical treatment secondary to the initial resolution of a medical benefit dispute to the medical treatment schedule, and thereafter the medical director, do not deprive claimants of any right to seek medically necessary care or alter the ongoing substantive obligation of employers to pay for such care under La. R.S. 23:1203(A). While referencing the substantive right conferred by La. R.S. 23:1203(A), La. R.S. 23:1203.1 does not alter it. Rather, it facilitates the implementation of that right.
In this case, it was neither claimant nor her treating physician who initiated the request for additional authorization of the neuropathic cream. Instead, claimant's pharmacy required further authorization from defendant for the three medications Dr. Gordon had been prescribing for Smith. Defendant denied the necessary approval, having determined that the neuropathic cream was not medically necessary based upon the recommendation of their reviewing physician, who looked at one medical report and one insurance form (but none of the other documentation previously relied upon by defendant in determining the cream's medical necessity), and without examining claimant or speaking with her treating physician, Dr. Gordon.
We find this case to be analogous to Black v. CenturyLink , 50,572 (La. App. 2 Cir. 04/13/16), 195 So.3d 28, writ denied , 16-0905 (La. 09/06/16), 204 So.3d 1000. In Black , the claimant, who had upper extremity pain caused by chronic regional pain syndrome (CRPS) and carpal tunnel syndrome (CTS), sought review of the WCJ's determination that she had not proven by clear and convincing evidence that the decision of the medical director (which denied her request for topical cream to treat her neuropathic hand pain as the cream did not "meet established treatment standards of medical necessity") was not in accordance with the medical treatment guidelines (MTG). This Court in Black, supra at 32-33,, reviewed the pertinent *762 subchapters of the MTG on chronic pain disorders and chronic regional pain syndrome, and observed:
The case sub judice presents the very type of dispute that the MTG were designed to prevent. See Church Mutual Insurance Co. v. Dardar, supra . Both Dr. Acurio and Dr. Mosura determined that Ms. Black's pain was caused by DRPS/RSD and CTS, and Dr. Mosura prescribed the topical cream to treat her pain. Although the MTG do not include topical creams as nonoperative therapeutic procedure for patients with CTS, the MTG specifically list "topical medications" as an authorized treatment for CRPS. La. Admin. Code, title 40, part I, § 2131(C)(6)(d)(v)(a). The MTG's inclusion of the statement that "no literature addressing its [i.e., topical medication] use in patients with CRPS" does not negate the inclusion of topical medications as a nonoperative therapeutic treatment for patients with CRPS. Further, the MTG's inclusion of ketamine and capsacin as types of topical medications is an illustrative list, not an exclusive list. Therefore, the WCJ erred in not finding that the MTG "pre-authorized" the prescription of the topical cream to treat Ms. Black's pain caused by CRPS.
In this case, the principal reason given by defendant in support of its refusal to reauthorize the neuropathic cream was that this treatment was "not consistent with the clinical review criteria in Chapter 21. Pain Medicine Treatment Guidelines of the Medical Guidelines." However, because claimant's diagnosis is neuralgia/complex regional pain syndrome (CRPS) (formerly referred to as reflex sympathetic dystrophy or RSD), the specific provisions of the Medical Guidelines applicable are found in Subchapter B, §§ 2121 et seq. As noted by this Court in Black, supra , the MTG specifically list topical medications (such as the neuropathic cream prescribed by Dr. Gordon) as an authorized treatment for CRPS. This Court further found in Black that the WCJ's failure to find that the neuropathic hand cream prescribed for the claimant was preauthorized by the MTG was erroneous. Id. at 33. As held by the supreme court in Church Mutual Insurance Co., supra at 285, implementation of the MTG does not alter the employer's obligation to timely provide the injured employee with all necessary medical treatment pursuant to La. R.S. 23:1203(A).
Defendant's denial of the pharmacy's request for reauthorization of Smith's prescriptions was mailed to Dr. Gordon on March 29, 2016, but was not received by claimant until April 4, 2016. Claimant's 1009 form requesting review of defendant's denial of continued authorization of the prescription cream, which was received by the OWC director on April 18, 2016, was deemed untimely and rejected by the OWC, notwithstanding the fact that the denial by defendant was a letter of non-certification of medical necessity in response to a pharmacy request for continued authorization for prescriptions, not in response to a 1010 filed by claimant's medical provider. Smith's 1008 form, which requested review of the OWC director's rejection of her 1009 form, as well as review of defendant's determination that the neuropathic cream it had deemed medically necessary for approximately three years was no longer "consistent with [defendant's] clinical review criteria," clearly set forth a "claim or dispute arising out of" the Workers' Compensation Act. See Broussard Physical Therapy, supra ; Brookshire Grocery Co., supra .See also La. Const. Art. 5, § 16 (A);
*763 La. R.S. 23:1310.3(F) ; La. R.S. 23:1203.1(K).[3] We find no error in the WCJ's determination that subject matter jurisdiction existed in this case.
Attorney Fees and Penalties
In its second assignment of error, defendant urges that the WCJ erred in awarding penalties and attorney fees.
Louisiana R.S. 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer's or insurer's failure to authorize medical treatment. Louisiana R.S. 23:1201(F)(2) provides that Subsection (F) is inapplicable if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. Arrant v. Wayne Acree PLS, Inc. , 51,238 (La. App. 2 Cir. 05/02/17), 218 So.3d 737.
In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits. Id. ; Davenport v. Foster Farms, L.L.C. , 46,430 (La. App. 2 Cir. 07/13/11), 69 So.3d 1263, writ denied , 11-1781 (La. 10/14/11), 74 So.3d 213 ; Koenig v. Christus Schumpert Health System , 44,244 (La. App. 2 Cir. 05/13/09), 12 So.3d 1037 ; Howard v. Holyfield Construction, Inc. , 38,728 (La. App. 2 Cir. 07/14/04), 878 So.2d 875, writ denied , 04-2303 (La. 01/07/05), 891 So.2d 684. Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by the claimant. Arrant, supra; Maxwell v. Care Solutions, Inc. , 50,088 (La. App. 2 Cir. 09/30/15), 179 So.3d 650, writ denied , 15-1954 (La. 11/30/15), 184 So.3d 36 ; Massey v. Fresenius Medical Care Holding , 49,407 (La. App. 2 Cir. 11/19/14), 152 So.3d 1019, writ denied , 14-2650 (La. 03/06/15), 160 So.3d 1290. The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. Lafayette Bone & Joint Clinic, supra; Authement v. Shappert Engineering, 02-1631 (La. 02/25/03), 840 So.2d 1181; Henderson v. Graphic Packaging, Inc. , 48,491 (La. App. 2 Cir. 11/20/13), 128 So.3d 599.
Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature and are intended to deter indifference and undesirable *764 conduct by employers and insurers toward injured employees. Iberia Medical Center v. Ward , 09-2705 (La. 11/30/10), 53 So.3d 421 ; Smith v. Highlines Construction Co., Inc. , 50,636 (La. App. 2 Cir. 07/06/16), 198 So.3d 210. The WCJ's grant or denial of penalties and attorney fees in a workers' compensation case is subject to manifest error review. Thomas v. Browning-Ferris Inc ., 04-1584 (La. 02/25/05), 894 So.2d 1091 ; Smith, supra; Tingle v. Page Boiler, Inc ., 50,373 (La. App. 2 Cir. 01/13/16), 186 So.3d 220.
At the beginning of the hearing, defendant's counsel informed the WCJ that defendant's adjuster had approved the neuropathic cream after taking Dr. Gordon's deposition the previous week. Thus, the only issue left for the WCJ to decide was whether claimant was entitled to attorney fees and penalties as a result of defendant's refusal to approve the neuropathic cream refills when requested to do so by claimant's pharmacy.
Notwithstanding defendant's own conclusion in November 2013 (and on several occasions thereafter) that the neuropathic cream was medically necessary, as well as a plethora of documentation as to the medical necessity of the neuropathic cream available to defendant and its third party administrator, defendant denied reauthorization of the prescription cream in late March 2016 based upon a cursory review of two medical/insurance documents and a reference to general language regarding topical medications found in the medical treatment guidelines. Claimant's attorney also supplied defendant with further documentation and evidence reiterating the medical necessity of the prescription cream on April 14, 2016. Despite this additional information, defendant did not authorize the neuropathic cream until a couple of days before the hearing in this matter (the day after taking Dr. Gordon's deposition). We find no error in the WCJ's conclusion that defendants failed to reasonably controvert the medical necessity of the neuropathic cream or its assessment of a $2,000 penalty and $8,000 attorney fee award.
In accordance with La. C.C.P. art. 2133, claimant has answered the appeal, requesting an increase in attorney fees for legal work performed in connection with this appeal. We award claimant's counsel an additional fee of $2,000 for her defense of the employer's unsuccessful appeal. See Frith v. Riverwood, Inc. , 04-1086 (La. 01/19/05), 892 So.2d 7 ; Maxwell, supra .
CONCLUSION
For the reasons set forth above, the judgment of the WCJ is amended to add an additional attorney's fee of $2,000 for this appeal. At defendant's costs, the judgment, as AMENDED, is AFFIRMED.

Defendant has also appealed from a ruling by the WCJ denying an exception of subject matter jurisdiction.

Medical necessity means health care services that are clinically appropriate, in terms of type, frequency, extent, site, and duration, and effective for the patient's illness, injury, or disease, and in accordance with the medical treatment schedule and the provisions of La. R.S. 23:1203.1. Kendrick v. Hercules Concrete Pumping Service, Inc. , 51,202 (La. App. 2 Cir. 02/17/17), 216 So.3d 256 ; Sanchez v. Caesar's Entertainment, Inc. , 49,864 (La. App. 2 Cir. 06/24/15), 166 So.3d 1283 ; Gilliam v. Brooks Heating & Air Conditioning , 49,161 (La. App 2 Cir. 07/16/14), 146 So.3d 734 ; LAC 40:I:2717(C)(3). To be medically necessary, a service must be consistent with the diagnosis and treatment of a condition or complaint, in accordance with the medical treatment schedule, not solely for the convenience of the patient, family, hospital or physician, and furnished in the most appropriate and least intensive type of medical care setting required by the patient's condition. Id.

In Lafayette Bone & Joint Clinic v. Louisiana United Business SIF , 15-2137 (La. 06/29/16), 194 So.3d 1112, which involved a pre-guidelines dispute, the defendant, LUBA, notified the plaintiffs, Lafayette Bone & Joint (LB & J) Clinic and its physicians, by letter dated June 5, 2008, that it would no longer pay for LB & J dispensed prescription medications and that any ongoing consent to or authorization of in-office dispensing of prescription medications by LB & J physicians was terminated. The supreme court found that LUBA's authorization for the injured employees to obtain medical treatment did not also include authorization to dispense prescription medications to the injured employee patients after the date of the letter which revoked or denied consent/authorization. The court pointed out that the plaintiffs' remedy was to seek OWC oversight of the dispute pursuant to La. R.S. 23:1034.2(F)(1) (which provides that, should a dispute arise between a health care provider and the employee, employer, or workers' compensation insurer, either party may submit the dispute to the OWC in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits) and La. R.S. 23:1310.3 (which provides that, a claim for benefits, the controversion of entitlement to benefits, or other relief under the Workers' Compensation Act shall be initiated by the filing of the appropriate form with the OWC administration.... Except as otherwise provided by R.S. 23:1101(B), 23:1361, and 23:1378(E), the WCJ shall be vested with original exclusive jurisdiction over all claims or disputes arising out of the chapter, including but not limited to ... payment for medical treatment....).