STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-366


BAYOU SHRIMP PROCESSORS, INC. AND
BRIDGEFIELD EMPLOYERS INSURANCE COMPANY

VERSUS

SHELLY DELAHOUSSAYE



**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT 09
PARISH OF IBERIA, DOCKET NO. 19-08376
ELIZABETH C. LANIER, WORKERS' COMPENSATION JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.


AFFIRMED.

**Kristine D. Smiley**
**Matthew W. Tierney**
**Tierney and Smiley, LLC**
**3535 South Sherwood Forest Boulevard**
**Suite 2333**
**Baton Rouge, Louisiana  70816**
**(225) 298-0770**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Bayou Shrimp Processors, Inc.**
  **Bridgefield Employers Insurance Company**

**Ted Williams**
**Attorney at Law**
**212 Laurel Street**
**Baton Rouge, Louisiana  70801**
**(225) 336-9600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Shelly Delahoussaye**

**CONERY, Judge.**

Bayou Shrimp Processors, Inc. (Bayou Shrimp), and its workers' compensation insurer, Bridgefield Employers Insurance Company (Bridgefield), (Petitioners), appeal the ruling of the Workers' Compensation Judge (WCJ), approving a Neuro Compound Cream (100 gm) for Defendant Shelly Delahoussaye, finding it was "allowable without specific restrictions" as per the Medical Treatment Guidelines (MTG). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Ms. Delahoussaye was an employee of Bayou Shrimp on August 19, 2016, when she was severely injured after being run over and dragged underneath a forklift. She suffered injury to her left hip, both knees and her right arm and hand, all of which required surgery. Ms. Delahoussaye's accident was accepted as compensable and workers' compensation indemnity and medical benefits were instituted and continue to be paid.

On November 14, 2019, Ms. Delahoussaye's treating pain management physician Dr. Matthew Mitchell, associated with Anesthesiology & Pain Consultants, filed a "Request of Authorization" (Form 1010), requesting authorization for treatment of Ms. Delahoussaye with a Neuro Compound Cream (100 gm), which was denied by Summit Holdings d/b/a/ Summit Claims (Summit), the third party administrator for Petitioners. Upon receiving the denial, Dr. Mitchell filed a Disputed Claim For Medical Treatment (Form 1009). The "Summary of the Details Regarding The Issue At Dispute," provided:

> Neuro Compounded Cream prescribed by a physician has been denied by the W/C adjuster. The topical therapy usually results in the de-escalation of use of concurrent pain medications and muscle relaxers.

LAC Title 40 states that topical drugs may be an alternative treatment for localized musculoskeletal disorder and is an acceptable form of treatment in selected patients.

Dr. Mitchell attached correspondence detailing the basis for his request to treat Ms. Delahoussaye with the Neuro Compounded Cream (100 gm), which stated in pertinent part:

> We have been asked by the CDC to decrease the amount of opiates that all non-cancer patients are on. In addition, the OWC generally and the Medical Treatment Guidelines (MTG) specifically seek to reduce the oral consumption of opiates and muscle relaxers. The MTG (see attached) also indicates the acceptability of "Topical Drug Delivery," such as the compound creams we prescribe.

> We are using compounded creams to reduce pain without the need for further escalation in opiates.

> All stakeholders need to continue to explore transdermal medication as a viable means to minimize symptoms and reduce the risk of drug abuse and addition.

> Topical analgesics are effective and safe for the relief of moderately severe chronic pain attributed to arthritis, neuropathic conditions and musculoskeletal disorders. Reductions in the interference of pain with activities of daily living have been noted. Importantly, the topical compound formulations are associated with reductions in the use of concurrent pain medications, including oral opioid analgesics. Potentially, ESI procedures and trigger point injections may not be required with the use of topicals.

> ....

> As outlined by Branvold, et al (2014), benefits of a customized regimen of topical agents include customizable dosing/drug combinations, ability to utilize multimodal therapy, application directly to the site of pain, improved adherence to the regimen, ease of adjustment or titration to the patient's needs, and minimization of abuse and addiction risk.

> ... Our treatment, which includes topical medication has led to improvements in function without opiates. This has allowed many of our patients to continue working or return to work.

In response to Dr. Mitchell's Form 1009, the claims adjuster for Summit, Glen East, sent an e-mail on November 27, 2019, to the Office of Workers' Compensation (OWCA) Medical Director which stated in pertinent part:

> We denied this compound cream. This is the reason we denied this cream per nurse case manager review:
>
> Web Auth received for Compound cream containing Gabapentin, Ketoprofen, Baclofen and Ketamine. Compound cream has been denied 9/15/17, 7/13/18 and 8/21/19 as the medication contained Ketoprofen that is not FDA approved & Baclofen is not recommended.
>
> Per LA MTG: v. Topical Drug Delivery:
> (a) Description. Topical medications, such as ketamine and capsacin (sic), may be alternative treatment for neuropathic disorders and is an acceptable form of treatment in selected patients although there is no literature addressing its use in patients with CRPS (Chronic Regional Pain Syndrome).

The e-mail then references what is described as the Official Disability Guidelines (ODG), which have been adopted by other states and which exclude four of the five ingredients listed by Dr. Mitchell in his request for the Neuro Compounded Cream (100 gm). The drugs denied included Ketoprofen, Baclofen, Gabapentin and Ketamine.

On December 11, 2019, the "Medical Guideline Dispute Decision" was issued by the Medical Director, Jason Picard, MD, in MGD:19-4262 and provided:

> **Reviewed Services:**
> **Neuro compound cream (100 gm)**
>
> The requested services have been reviewed for medical necessity and appropriateness according to the Louisiana Workers' Compensation Treatment Guidelines (RS 23:1203.1 J), and the Louisiana Administrative Code (LAC 40:1.2715). The following decision has been made:

3

NOTE:  This review determined whether or not the recommended treatment/services are in compliance with the Medical Treatment Schedule.  **It does not serve as authorization for the treatment/services, nor does it guarantee payment.**  *Actual authorization for any treatment/procedures must be obtained from the Carrier/Self-Insured employer.*

**Decision:**　　　　　**APPROVED**

**Rationale:**　　　　　**Care covered by the medical treatment schedule**

All records submitted were reviewed.  The documentation submitted does support the approval of the requested services in review for compliance with the Medical Treatment Schedule.

**The MTG notes the following specific to this request:**

•　　　The topical is allowable without specific restrictions as per the guidelines.

On December 19, 2019, Petitioners, Bayou Shrimp and Bridgefield, filed a Disputed Claim For Compensation (Form 1008) with the OWCA seeking to reverse the Medical Director's Decision approving the Neuro Compound Cream (100 gm) recommended by Dr. Mitchell.

The WCJ held a hearing on January 17, 2020 on Petitioners' Disputed Claim For Compensation (Form 1008).  Petitioners argued "that the compound prescription cream at issue is not encompassed by the Medical Treatment Guidelines and, thus, not subject to the (Form 1010) process or review by the Office of Workers' Compensation Medical Director."  In the alternative, Petitioners "argued that the compound prescription cream is not in accordance with the Medical Treatment Guidelines."

The only exhibits submitted by Petitioners were the Medical Director's Decision and the Writ Rulings of the First Circuit Court of Appeal supporting their position that the denial of the Neuro Compound Cream (100 gm) was not subject to review by the Medical Director.  When it was called to the attention of counsel for

Petitioners that the Medical Director's Record Re: MGD 19-4262 containing Dr. Mitchell's (Form 1009) appeal was not in the record, counsel requested that the WCJ take judicial notice of MGD 19-4262. After a bench conference, counsel for Ms. Delahoussaye offered to file the Medical Director's Record into evidence and it was accepted by the WCJ. At the conclusion of the hearing, the WCJ took the matter under advisement and requested the submission of post-hearing memoranda.

On March 26, 2020, the WCJ entered a written judgment in favor of the defendant Ms. Delahoussaye, upholding the Medical Director's approval of the Neuro Compound Cream (100 gm). The WCJ stated in pertinent part:

> The issue before this Court for consideration is 1) whether the Petitioners established by clear and convincing evidence that the medical director's decision (MGD 19-4262) regarding the Neuro Compound Cream (100 gm) should be over-turned and Petitioners' appeal granted.
>
> After considering the law, the evidence, and the record this Court renders the following Judgment.
>
> Judgment in favor of the Defendant, Shelly Delahoussaye, and against Petitioners. Bridgefield Employers Insurance Company and Bayou Shrimp Processors, Inc.
>
> IT IS ORDERED this Court finds the Petitioners did not meet their burden of proof by clear and convincing evidence to allow this Court to over-turn the Medical Director's Decision MGD 19-4262.
>
> IT IS ORDERED this Court denied Petitioners' 1008 appeal of MGD:19-4262 and dismisses this 1008 appeal with prejudice.

Petitioners now appeal the March 26, 2020 Judgment of the WCJ. The Petitioners requested Written Reasons for Judgment from the WCJ which were rendered on June 10, 2020, after Petitioners' suspensive appeal had already been filed on April 27, 2020.

5

## ASSIGNMENTS OF ERROR

Petitioners assert the following three assignments of error on appeal:

1.    The trial court erred in holding that prescription medication is subject to the authorization and appeal process set forth in La.R.S. 23:1201.1 and the Louisiana Administrative Code.

2.    The trial court erred in holding the medical treatment schedule pre authorizes and/or tacitly approves compound prescription medication.

3.    The trial court erred in holding that Appellants failed to establish by clear and convincing evidence that the Medical Director's decision was not in accordance with the Medical Treatment Guidelines.

## LAW AND DISCUSSION

### *Standard of Review*

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corr.*, 93-1305 (La. 2/28/94), 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, *Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "[i]f the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

### *Assignments of Error One and Two Are Not Addressed In The WCJ's Judgment*

Petitioners urge in their first assignment of error that prescription medication is not subject to the authorization and appeal process set forth in La.R.S. 23:1203.1

and the Louisiana Administrative Code. In their second assignment of error, they argue the WCJ erred in finding that the MTG "pre-authorizes and/or tacitly approves compound prescription medication."

Counsel for Ms. Delahoussaye responds to these first two errors arguing, "The Appellants' first two assignments of error are discussed in the trial court's June 10, 2020 written reasons for Judgment, issued after this appeal was filed, but are not issues determined by the trial court in its March 26, 2020 judgment."

In *City of Abbeville v. Suire*, 19-847 (La.App. 3 Cir. 6/3/20), 298 So.3d 853, a panel of this court cited the Louisiana Supreme Court's decision in *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507, on the issue of an appellate court's review of written reasons for judgment. The supreme court stated in *Wooley*, 61 So.3d at 572 that when the appellate panel relied on the district court's written reasons that it failed by not considering:

> "[T]he well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Bellard v. American Cent. Ins. Co.*, 2007-1335 p. 25 (La.4/18/08), 980 So.2d 654, 671; *Greater New Orleans Expressway Commission v. Olivier*, 2002-2795 p. 3 (La.11/18/03), 860 So.2d 22, 24 ("Appeals are taken from the judgment, not the written reasons for judgment."); La. C.C.P. arts. 1918, 2082 and 2083. Judgments are often upheld on appeal for reasons different than those assigned by the district judges. "The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed...." *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir.1977).

Only Petitioners' assignment of error three is referenced in the WCJ's March 26, 2020 judgment, which found that Petitioners failed to carry their burden of proof to overturn the Medical Director's Decision to allow Ms. Delahoussaye to receive the Neuro Compound Cream (100 gm). Accordingly, we will pretermit any review of Petitioners' assignments of error one and two.

7

***Assignment Of Error Three—Manifest Error***

The WCJ's judgment in this case specifically states that Petitioners failed to "meet their burden of proof by clear and convincing evidence to allow this Court to over-turn the Medical Director's MGD:19-4262," which approved the request of her treating physician for a Neuro Compound Cream (100 gm).

Procedural Posture Of The Case

In this case, after the denial by Summit, Petitioners' plan administrator, Dr. Mitchell, filed a Form 1009, which resulted in the approval of the Neuro Compound Cream (100 gm) for Ms. Delahoussaye by the Medical Director. Subsequently, Petitioners filed a Form 1008 disputed claim for compensation. Counsel for Ms. Delahoussaye was unaware of any of the prior proceedings, including Dr. Mitchell's Form 1009 appeal or the Medical Director's Decision, until he received Petitioners' Form 1008 claim submitted to the WCJ.

The WCJ in its reasons for judgment addressed the unusual procedural posture of the case, where Ms. Delahoussaye's treating physician filed the Form 1009 seeking medical review from the Medical Director for the prescription medication, and stated:

> If the employer did not want to authorize the cream, the remedy is not to appeal the prescription to the Medical Director but to deny the cream, and have the employee file a 1008 to litigate the issue before the judge. If the employer does not want to approve the cream, due to say the cost of it or if the employer feels there is a better option, the remedy is to have a 1008 filed for litigation purposes and not use the 1009 appeal process.

However, the WCJ further provided:

> Compound Creams are found in the MTG; therefore, the Medical Director would have been able to comment on the cream to determine if it was acceptable. He is not making a determination that the cream prescribed is the best course of action for the employee to use. He is determining that the doctor has the right to prescribe that cream as a

8

treatment under the MTG and the employee has the right to receive a compound cream as a treatment under the MTG. If there were contraindications listed under the Topical Delivery Section of the MTG, then the Medical Director could use his authority to determine if the specific type of cream prescribed is allowed under the MTG; however, **Louisiana decided not to limit the ingredients comprising the compound cream**.

(Emphasis added.)

The only pertinent evidence relating to the WCJ's judgment submitted by Petitioners at the hearing was the two page Medical Director's Decision approving the Neuro Compound Cream (100 gm), specifically stating "The topical is allowable without specific restrictions as per the guidelines."[1] Counsel for Ms. Delahoussaye initially placed into evidence the Form 1010 request for Lidocaine Ointment 5% dated November 25, 2019, and a request for court costs of $30.00.

Neither party requested that the Medical Director's Record Re: MGD:19-4262 be placed into evidence. After a discussion off the record with the WCJ, Petitioner's counsel requested that the WCJ take judicial notice of the Medical Director's Record, after which counsel for Ms. Delahoussaye, without objection, offered the Medical Director's Record into evidence.

Evolution of Workers' Compensation in Louisiana

The history of the evolution of the Workers' Compensation Act and its structure is briefly discussed below:

La. R.S. 23:1310.3(F) provides for OWC jurisdiction for all "claims or disputes arising out of" the Workers' Compensation Act. *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013 (La. 12/02/08), 5 So.3d 812; *Brookshire Grocery Co. v. Musculoskeletal Institute of Louisiana, A.P.M.C.*, 50,208 (La.App. 2 Cir. 5/18/16), 195 So.3d 528.

La.R.S. 23:1203(A) provides in part that in every workers'

---

[1] The Petitioners also submitted the Writ Rulings from the First Circuit Court of Appeal, which provided support for assignment of error one which as previously stated is not subject to review on appeal.

compensation case, "the employer shall furnish all necessary **drugs**, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." As noted by the supreme court in *Church Mutual Insurance Co. v. Dardar*, 13-2351 (La. 05/07/14), 145 So.3d 271, 283, no changes to the language of La. R.S. 23:1203(A) were effected with the enactment of La. R.S. 23:1203.1 and the promulgation of the medical treatment schedule. Rather, the language of La. R.S. 23:1203 and the obligation set forth therein remains unchanged. **Medical necessity remains the touchstone for an employer's obligation to pay for medical care.**

*Smith v. Graphic Packaging, Inc.*, 51,590, pp. 4-5 (La.App. 2 Cir. 9/27/17), 244 So.3d 755, 759 (emphasis added), *writ denied*, 17-1806 (La. 12/15/17), 231 So.3d 640.

The supreme court's seminal ruling in *Dardar*, 145 So.3d at 284, explained that, Louisiana R.S. 23:1203 and 23:1203.1, "are laws on the same subject matter which must and can be interpreted in reference to each other." *See* La.Civ.Code art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.") "In short, La.R.S. 23:1203.1 and the medical treatment guidelines '[do] not alter' a claimant's rights to necessary medical treatment under La.R.S. 23:1203(A), but rather they 'create rebuttable presumptions as to the necessary treatment required by La.R.S. 23:1203(A).'" *Ardoin v. Calcasieu Par. Sch. Bd.*, 15-814, p. 5 (La.App. 3 Cir. 2/3/16), 184 So.3d 896, 900 (quoting *Dardar*, 145 So.3d at 284-85), *writ denied*, 16-641 (La. 5/27/16), 192 So.3d 738.

## ANALYSIS AND REASONS

The WCJ in its written reasons discussed the Medical Director's Record and stated as follows:

> In Dr. Matthew Mitchell's 1009 application he stated, "LAC Title 40 states that topical drugs may be an alternative treatment for localized musculoskeletal disorder and is an acceptable form of treatment in selected Patients." In Dr. Mitchell's 1010, he listed chronic pain syndrome as the diagnosis and the neuro compound cream as the request. In the 1010 dated November 25, 2019, created by Dr.

10

Mitchell, the diagnosis is chronic pain syndrome and the prescription recommended is Lidocaine ointment 5%. The Petitioner's adjuster informed the LWC OWC Medical Services nurse that he was not going to approve the topical cream because the FDA had not approved the ingredient for topical application. The adjuster was relying on another state's medical treatment schedule called the OGD. In the letter from Glen East on 11-17-2019 to Brenda Gannuch with the OWC Medical Services Section he mentioned the Tropical Drug Delivery section in the La. MTG discussed ketamine and capsaicin as an alternative treatment for neuropathic disorder and is an acceptable form of treatment. Then he used the OGD MTG to limit the approval of the cream due to the ingredients requested by Dr. Mitchell….

As found by the WCJ, the Neuro Compound Cream (100 gm) was denied based on a nurse case manager's review, after having been previously denied three times on the basis that the medication contained Ketoprofen, which is not FDA approved, and Baclofen which is not recommended.

The Summit Claims Adjuster's response further stated, "ODG further explains: Pain (updated 11/12/19)…10) Any compounded product that contains at least one drug (or drug class) that is not recommended is not recommended. (Wynn, 2011)." The Claims Adjuster then excluded four of the five ingredients listed by Dr. Mitchell in his request for the Neuro Compound Cream (100 gm). The drugs denied included **Ketoprofen**: "This agent is not currently FDA approved for a topical application," **Baclofen**, and **Gabapentin,** which were "Not Recommended," and **Ketamine,** "Not Recommended. There is no FDA-approved topical formulation of this drug," (Emphasis added.) As previously stated, the ODG are guidelines adopted by other states. *See White v. Fuel Plus, LLC*, 17-125 (La.App. 3 Cir. 10/4/17), 229 So.3d 539.

The Summit Claims Adjuster denied Dr. Mitchell's request despite the fact that the MTG adopted by Louisiana does not limit the ingredients used in a topical prescription, as found by the Medical Director and specifically stated in his Decision.

11

"**The MTG notes the following specific to this request:** The topical is allowable without specific restrictions as per the guidelines."

Dr. Mitchell was seeking a treatment for "localized musculoskeletal disorder." 40 LAADC Pt1 §2111(6)(x), entitled Topical Drug Delivery, Section (a) indicates, "Description. Topical creams and patches may be an alternative treatment of localized musculoskeletal and neuropathic disorders and can be especially helpful in avoiding opioid use." Excessive and addictive opioid use was one of the main reasons that Dr. Mitchell made the request for the Neuro Compound Cream (100 gm) for Ms. Delahoussaye. Dr. Mitchell was seeking to reduce the use of oral opioid medication.

The application of the "General Guideline Principles" as found in 40 LAADC Pt.1, §2103 (14)(a) was urged by Ms. Delahoussaye in support of her position and provides, "All recommendations in the guidelines are considered to represent reasonable care in appropriately selected cases regardless of the level of evidence or consensus statement attached to it." Thus, the use of topical prescriptions are pre-authorized by the MTG, as specifically stated in connection with this case by the Medical Director. Further, this same conclusion was reached by our sister circuit in the cases involving whether or not topical prescriptions were included in the MTG. *See Smith,* 244 So.3d 755; *Black v. CenturyLink*, 50,572 (La.App. 2 Cir. 4/13/16), 195 So.3d 28, *writ denied*, 16-905 (La. 9/6/16), 204 So.3d 1000.

Based on the record before the WCJ, we find no manifest error in the WCJ's ruling that Petitioners failed to "support their position with clear and convincing evidence" necessary to overturn the Medical Director's Decision (MGD 19-4262), approving the use of the Neuro Compound Cream (100 gm) as a form of treatment

for Ms. Delahoussaye under the "Chronic Pain Medical Guideline" portion of the Workers' Compensation MTG.

## CONCLUSION

For the foregoing reasons, the WCJ's March 26, 2020 judgment in favor of Shelly Delahoussaye is affirmed in its entirety. The Form 1008 appeal of Petitioners', Bayou Shrimp Processors, Inc. and Bridgefield Employers Insurance Company, was properly denied and is dismissed with prejudice. All costs of this appeal are assessed to Petitioners' Bayou Shrimp Processors, Inc. and Bridgefield Employers Insurance Company.

**AFFIRMED.**